STATE OF NORTH CAROLINA v. ARGENIS ALVAREZ OSORIO

No. COA08-1199

(Filed 21 April 2009)

### 1. Jury— deadlock—trial court required continuation of deliberations

The trial court did not abuse its discretion or commit plain error in a trafficking in cocaine case by failing to *ex mero motu* declare a mistrial and requiring the jurors to continue their deliberations after the jury announced it was deadlocked because a review of the totality of circumstances revealed that the trial court's instructions merely served as a catalyst for further deliberations, and defendant failed to point to any statement, act, or omission by the trial court which could be interpreted as coercive; and although defendant noted that the jury deliberated nine hours without a mistrial being declared, the amount of time that the jury deliberated in this case was not so long as to be coercive in nature.

**STATE v. OSORIO**

[196 N.C. App. 458 (2009)]

## 2. Drugs— acting in concert—instruction—sufficiency of evidence

A de novo review revealed that the trial court did not err in a trafficking in cocaine case by instructing on the theory of acting in concert because there was sufficient evidence that another person, Hernandez, was involved, including that: (1) Hernandez opened the door to admit a detective to the residence prior to the drug deal; and (2) defendant stated that he either handed the bricks of cocaine to the detective himself with Hernandez present, or Hernandez handed the cocaine to the detective and defendant subsequently shook the detective's hand.

## 3. Jury— failure to individually poll jurors—substitution of defense counsel during jury deliberations

The trial court did not commit reversible or plain error in a trafficking in cocaine case by failing to individually poll the jurors and by allowing the substitution of counsel during the jury deliberations because: (1) neither the polling of the jury nor the substitution of counsel issue is subject to plain error analysis when defendant did not argue that the trial court's instructions to the jury were erroneous; (2) defendant waived any error by failing to object to the trial court's polling of the jury by show of hands and did not request individual polling as required by N.C. R. App. P. 10; and (3) there was no indication the trial court abused its discretion, nor that defendant suffered any prejudice, by the substitution of the public defender as defense counsel during jury deliberations when the assistant public defender was ill.

## 4. Appeal and Error— preservation of issues—failure to assign error

Although defendant contends his substitute counsel was ineffective for failing to request that the jury be polled following the return of the verdicts in accordance with N.C.G.S. § 15A-1238, this issue was not properly preserved because defendant failed to assign as error any ineffective assistance of counsel.

Appeal by defendant from judgment entered 1 February 2008 by Judge Thomas D. Haigwood in Forsyth County Superior Court. Heard in the Court of Appeals 25 February 2009.

*Attorney General Roy Cooper, by Assistant Attorney General David D. Lennon, for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

STATE v. OSORIO

[196 N.C. App. 458 (2009)]

STEELMAN, Judge.

The trial court did not abuse its discretion when instructing a jury to continue deliberations after two days and allowing substitution of counsel during jury deliberations. The trial court did not err in instructing the jury on acting in concert when a defendant's own statements implicated a second party in a drug transaction. Where defendant did not request individual polling of the jury at trial, the question is not preserved on appeal.

## I. Factual and Procedural Background

On 6 March 2007, the Winston-Salem Police Department conducted an undercover drug operation at 5555 Indiana Avenue in Winston-Salem, North Carolina. The operation was initiated when a confidential informant told police he could arrange the purchase of a large amount of cocaine.

A search warrant was obtained, which allowed the search of the premises if the informant observed at least three kilograms of cocaine. The informant went to the premises accompanied by Detective T.D. James (Detective James) of the Winston-Salem Police Department. Detective James, acting undercover as the informant's uncle, was to have remained in the car. The informant was to contact Detective James if he saw the required amount of cocaine. However, Detective James was called into the residence by the informant when the occupants became nervous about him remaining in the car.

When Detective James arrived at the sliding glass door of the dwelling, he was admitted by a person later identified as Lucas Reyes Hernandez. According to the testimony of Detective James, defendant was standing beside the kitchen table on which a shoe box was situated and began pulling out brick-shaped packages, which were wrapped in plastic. Detective James asked if it was good, and defendant nodded and replied in English, "[I]t's good."

The informant then called on his cell phone, ostensibly to request the money to consummate the purchase of the cocaine. This was the signal that the search warrant conditions were met. The police entry team announced their presence and entered the premises. Defendant ran into the back bedroom. Detective James pulled out his badge, drew his weapon, announced he was a police officer, and followed defendant into the bedroom.

Following his arrest, defendant gave conflicting accounts of the events of 6 March 2007 to Detective Gomez of the Winston-Salem

STATE v. OSORIO

[196 N.C. App. 458 (2009)]

Police Department. In one account, defendant stated that he stayed in the kitchen where he saw Mr. Hernandez let Detective James inside the premises, and he saw Mr. Hernandez hand the detective a "quadro." "Quadro" is Spanish for square and is a common term used by people that are dealing in drugs to refer to a kilogram of powder cocaine. In another version, defendant stated he saw Mr. Hernandez give Detective James a "quadro," and defendant subsequently shook hands with Detective James.

Defendant was charged with maintaining a dwelling for the sale or distribution of controlled substances, possession of cocaine with intent to sell and deliver, trafficking in cocaine by possession of 400 grams of cocaine or more, and conspiracy to traffic in cocaine by possession of 400 grams or more.

At trial, the charge of maintaining a dwelling for the sale or distribution of controlled substances was dismissed by the trial court after the close of the State's evidence. Defendant's motion to dismiss the remaining charges was denied. Defendant did not introduce any evidence at trial.

The remaining charges were submitted to the jury on 30 January 2008. The jury continued its deliberations on 31 January 2008. At 11:00 a.m., the trial court received a note from the jury stating they were unable to reach a unanimous verdict. The trial court advised counsel that he intended to give the jury an *Allen* charge, and neither counsel objected. The jurors were instructed to continue their deliberations without the surrender of conscientious convictions. Later that day the jury communicated that it had reached a unanimous decision as to one charge but were deadlocked on the remaining two charges.

On 1 February 2008, defendant's counsel, Mr. Ferguson, an Assistant Public Defender, was ill, and Pete Clary, the Public Defender, appeared as counsel for defendant. Defendant initially told the trial court if somebody had sent Mr. Clary that it was "okay" if he represented him. Thereafter, defendant expressed concern that no one had told him Mr. Ferguson would not be there, and he did not understand what was "going on." The trial court, through a translator, advised defendant that Mr. Ferguson was sick, and this had not been known previously. The trial court then granted Mr. Clary's motion to be substituted for Mr. Ferguson.

At 10:20 a.m., after the trial court requested the jury take a formal vote, the jury reported to the trial court that they were dead-

locked 11-1 on the remaining two charges and had been deadlocked since around noon on the day before. The trial court noted the progress that was made the morning before and again instructed the jury that it was their duty to try to reach a verdict. The trial court admonished the jury not to surrender their "conscientious convictions" or their "convictions as to the weight or effect of the evidence" because of the opinions of other jurors for the mere purpose of returning a verdict. Neither counsel objected to this instruction, and the jury returned to their deliberations.

At 12:40 p.m. on 1 February, the jury reported it had reached a unanimous verdict on a second charge, and it was still deadlocked 11-1 on the third charge. Following a lunch break, the trial court proposed returning the jury to the courtroom and taking the two verdicts that had been reached. Both counsel stated they had no objection.

The jury returned verdicts of guilty on the charge of trafficking in cocaine by possessing 400 or more grams and not guilty of conspiracy to commit trafficking in cocaine. After the reading of each verdict, the trial court asked the jurors to raise their hands if they agreed with the verdict, and each time, all of the jurors raised their hands. The trial court asked the respective counsel if they had anything further, and both replied in the negative. The State dismissed the charge of possession with intent to sell and deliver cocaine with respect to which the jury was unable to reach a verdict.

Defendant was sentenced to the mandatory active term of 175 months to 219 months imprisonment, a fine of $250,000.00, and costs of court. The trial court further recommended that upon completion of his sentence that defendant be released to immigration authorities for deportation due to his status as an illegal alien.

Defendant appeals.

## II.  Failure to Declare a Mistrial

[1] In his first argument, defendant contends that the trial court abused its discretion or committed plain error in failing to *ex mero motu* declare a mistrial and requiring the jurors to continue their deliberations after the jury announced they were deadlocked. We disagree.

We first note that plain error analysis only applies to instructions to the jury and evidentiary matters. *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578 (2000) (citing *State v. Atkins*, 349 N.C. 62, 81, 505 S.E.2d 97, 109 (1998), *cert. denied*, 526 U.S. 1126, 143 L. E. 2d 1036

(1999)), *cert. denied,* 531 U.S. 1041, 148 L. Ed. 2d 543 (2000). Defendant did not move for a mistrial at any point during trial or during deliberations and did not preserve the mistrial issue for appellate review. *See* N.C.R. App. P. 10(b) (2008). Therefore, the mistrial issue was not preserved at trial, not subject to plain error review, and is not properly before this Court.

N.C. Gen. Stat. § 15A-1235 addresses jury deliberations and deadlocked juries, and provides trial judges with clear standards for instructions urging jury verdicts. *State v. Baldwin,* 141 N.C. App. 596, 607, 540 S.E.2d 815, 823 (2000). Subsections (c) and (d) provide:

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

N.C. Gen. Stat. § 15A-1235 (c) and (d) (2007).

The appellate court must decide whether a trial court's instructions forced a verdict or merely served as a catalyst for further deliberations. *See State v. Fernandez,* 346 N.C. 1, 21, 484 S.E.2d 350, 362-63 (1997) (citing *State v. Peek,* 313 N.C. 266, 271, 328 S.E.2d 249, 253 (1985)). The appellate court must look to the "totality of the circumstances" in determining whether the trial court coerced a verdict from the jury. *State v. Porter,* 340 N.C. 320, 335, 457 S.E.2d 716, 723 (1995) (citing *State v. Patterson,* 332 N.C. 409, 416, 420 S.E.2d 98, 101 (1992)). Some factors to be considered are "whether the trial court conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict." *Id.*

Defendant contends that at the time the jury announced they were deadlocked after deliberating nine hours over three days that the trial court should have declared a mistrial because the instruction given at that time led the jurors to believe they had to reach a verdict before they would be allowed to go home. However, in reviewing the totality of the circumstances the trial judge did not abuse his discretion when instructing the jury pursuant to N.C. Gen. Stat. § 15A-1235(c) and (d). The circumstances under which the

instructions were made establishes that the trial court's instructions merely served as a catalyst for further deliberations. *See id.*

The jurors reported the first impasse on 31 January after only deliberating a few hours. The trial judge instructed the jurors:

> [L]et me first point to you . . . that you folks have only been deliberating a little over two hours and that this is just Thursday morning. Let me say to you that I want to emphasize the fact that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable women and attempt to reconcile your difference, if you can, without surrender of conscientious convictions.

Neither counsel objected when the trial court encouraged the jury to continue deliberations. The same day the jury requested clarification on the definition of intent. The trial court instructed the jury with regards to that definition, and the jury reported having reached a verdict on one of the charges.

A second impasse was reported 1 February. When the foreman reported the jury was deadlocked on the remaining two charges, the trial court instructed the jury to take a formal vote. At that time the trial court instructed the jurors:

> As you heard me say to you previously, . . . it's your duty to apply the law as I have given it to you and not as you think the law is or as you might like the law to be. . . . This is important because justice requires that everyone tried for the same crimes, wherever that might be in North Carolina, be treated in the same way and have the same law applied in each such case. . . . Now, if you ladies will be so kind as to go to the jury room and take some formal votes and let me—and let me know when you're ready so that you can answer these questions. Thank you.

After the jury reported that it was deadlocked 11-1, the trial court further instructed the jury:

> I'm going to ask you to go to the jury room, the jury, and consider what I have said to you folks moments ago. And let me say this to you further. I want to emphasize the fact that it's your duty to do whatever you can to reach verdicts. You should reason the matter over together as reasonable women and attempt to reconcile your differences, if you can, without the surrender of conscientious convictions, bearing in mind, of course, that it's your duty to fol-

low the law as I've given it to you, your sworn duty. However, you should not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your f[e]llow jurors or for the mere purpose of returning a verdict.

The jury twice requested clarification on the law after this instruction, and the trial court, after informing each counsel on the intended instructions, gave the instruction at issue. After the trial court read the instructions, it asked if there was anything from the State or defendant, and each responded in the negative. Thereafter, the jury reached a second verdict but remained deadlocked on the third charge.

There is no evidence in the record to suggest that the trial court expressed irritation with the jury for not reaching a verdict. The record reveals that the trial judge was polite, considerate, and accommodating toward the jury. The judge instructed the jurors to reason the matter over as reasonable jurors but not to surrender conscientious convictions. There was also no indication that the trial court intimated to the jury that it would hold them until they reached a verdict. The only time the trial court noted time was on 31 January when the trial court stated that the jury had only been deliberating a couple of hours. After each instruction, the jury posed questions to the trial court, and the trial court noted the progress that was made after the first purported deadlock when the jury reached a verdict on one charge. When viewing the totality of the circumstances, the trial judge did not abuse his discretion when instructing the jurors to continue deliberations. Defendant has failed to point to any statement, act, or omission by the trial court which could be interpreted as coercive.

Defendant also notes that the jury deliberated nine hours without a mistrial being declared. However, our prior cases indicate that the amount of time that the jury deliberated in the case at bar was not so long as to be coercive in nature. *See State v. Jones,* 47 N.C. App. 554, 562, 268 S.E.2d 6, 11 (1980) (stating a two-day period is not an "unreasonable" period under N.C. Gen. Stat. § 15A-1235); *see also State v. Beaver,* 322 N.C. 462, 465, 368 S.E.2d 607, 609 (1988) (holding that there was no coercion by the trial court where the jury deliberated all day Friday and all day Saturday). Without any other evidence of coercion or error on the part of the trial court, defendant's contention that the duration of the deliberations alone is enough to warrant a mistrial is without merit. The nine hours of deliberation is not itself indicative

of coercive conduct, and when viewing the totality of the circumstances, the trial judge did not abuse his discretion in instructing the jurors pursuant to N.C. Gen. Stat. § 15A-1235.

This argument is without merit.

### III. Acting in Concert

**[2]** In his second argument, defendant contends that the trial court erred by giving a jury instruction on acting in concert. We disagree.

Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court. *See, e.g., State v. Ligon*, 332 N.C. 224, 241-42, 420 S.E.2d 136, 146-47 (1992); *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 434 (1990). An instruction about a material matter must be based on sufficient evidence. *See Childress v. Johnson Motor Lines, Inc.*, 235 N.C. 522, 530, 70 S.E.2d 558, 564 (1952).

In order to support a jury instruction on acting in concert, the State must prove that the defendant is "present at the scene of the crime" and acts "together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979). "If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, the judge must explain and apply the law of 'acting in concert.' " *State v. Mitchell*, 24 N.C. App. 484, 486, 211 S.E.2d 645, 647 (1975).

Defendant argues there is no evidence that Mr. Hernandez participated in the events of 6 March and that an acting in concert instruction was not proper. However, there was sufficient evidence presented at trial that Hernandez was involved in the transaction. Hernandez opened the door to admit Detective James to the residence prior to the drug deal. In addition, defendant's own statements implicated Hernandez in the drug transaction. Defendant stated that defendant either handed the bricks of cocaine to Detective James himself with Hernandez present, or Hernandez handed the cocaine to Detective James and defendant subsequently shook the detective's hand. This evidence was sufficient to support an instruction on acting in concert.

This argument is without merit.

## IV. Polling of the Jury

**[3]** In his third argument, defendant contends that the trial court committed reversible or plain error in failing to individually poll the jurors and in allowing the substitution of counsel during the jury deliberations. We disagree.

As noted previously, plain error analysis only applies to instructions to the jury and evidentiary matters. *Greene*, 351 N.C. at 566, 528 S.E.2d at 578. Defendant does not argue that the trial court's instructions to the jury were erroneous. Therefore, neither the polling of the jury issue nor the substitution of counsel issue are subject to plain error analysis.

We first address the issue of whether the trial court committed reversible error by failing to poll the jurors individually. In order to preserve an issue for appellate review:

> [A] party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C.R. App. P. 10(b)(1) (2008). "[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C.R. App. P. 10(a) (2008). Defendant waived any error by failing to object to the trial court's polling of the jury by show of hands and did not request individual polling. Accordingly, defendant has failed to preserve this issue for appellate review.

We next address the issue of whether the trial court committed reversible error by allowing a substitution of counsel during jury deliberations. Prior cases indicate that the decision to allow substitution of counsel rests within the sound discretion of the trial court. *See State v. Gary*, 348 N.C. 510, 516, 501 S.E.2d 57, 62, (1998) (citing *State v. Robinson*, 290 N.C. 56, 66, 224 S.E.2d 174, 180 (1976)). After reviewing the record, there is no indication that the trial judge abused his discretion in allowing the substitution of defendant's counsel during jury deliberations.

On 1 February, defendant's counsel, the Assistant Public Defender, was ill, and the Public Defender, Mr. Clary, appeared as coun-

sel for the defendant. Defendant requested that he be heard by the trial court regarding the substitution of counsel and stated by interpreter, "If somebody send him here, okay, let him represent me." The translator further stated, "He said, if somebody sent him, let him represent me. That's the translation, Your Honor."

The trial judge explained to defendant that Mr. Clary was being substituted for defendant's counsel because his counsel was ill. The trial judge further stated, "We're simply waiting for the jury to return a verdict. Help me understand what your problem is." Defendant expressed confusion and then stated that he did not even know what was "going on." The trial judge then said to defendant that he was sorry for any confusion and addressed Mr. Clary's motion to be substituted as counsel for defendant:

> [T]hat motion is allowed. I don't see any prejudice that could be—come to the defendant by your presence here through the taking of the verdict. Now, if it results—if the verdict is something that calls upon me to impose a judgment or sentence in the case, then I'll be more than happy to hear any concerns that anyone might have about those aspects of it. But I see at this point, we're simply waiting for a jury's verdict. And I'll certainly explain to the jury, unless you object, that Mr. Ferguson is sick at home and that you're his boss, and that you're here in his place this morning.

Mr. Clary consented to this instruction and requested that the trial judge not inform the jury that he was from the Public Defender's office. The trial judge agreed to this request.

After reviewing the record and transcript, we agree that defendant did not suffer any prejudice from the substitution of counsel under these circumstances. Mr. Clary was substituted for Mr. Ferguson during jury deliberations. The trial court noted this when addressing defendant and attempted to explain the situation to defendant when he expressed confusion. The trial judge did not abuse his discretion in allowing the substitution of counsel.

### V.  Ineffective Assistance of Counsel

[4] Finally, defendant appears to argue that his substitute counsel was ineffective for failing to request that the jury be polled following the return of the verdicts in accordance with N.C. Gen. Stat. § 15A-1238. Defendant failed to assign as error any ineffective assist-

ance of counsel, and this issue is not properly before this Court. *See* N.C.R. App. P. 10(a).

NO ERROR

Judges BRYANT and ELMORE concur.