An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-997
NORTH CAROLINA COURT OF APPEALS

Filed:  20 May 2014

STATE OF NORTH CAROLINA

v.                                Rockingham County
                                  Nos. 11 CRS 817
                                       11 CRS 50150
                                       13 CRS 354
WOODROW JOSH CRADDOCK, JR.


Appeal by defendant from judgment entered 11 April 2013 by Judge Edwin G. Wilson in Rockingham County Superior Court. Heard in the Court of Appeals 20 February 2014.

> *Roy Cooper, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State.*
>
> *David L. Neal for defendant-appellant.*


DAVIS, Judge.


Woodrow Josh Craddock, Jr. ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury, and malicious assault in a secret manner.  On appeal, he argues that (1) the trial court

erred by failing to instruct the jury on voluntary intoxication; and (2) he received ineffective assistance of counsel. After careful review, we conclude that Defendant received a fair trial free from error.

## Factual Background

The evidence presented by the State at trial tended to show the following: On the evening of 15 January 2011, Joel Craddock ("Joel"), Defendant's son, was celebrating his 36th birthday with his wife and friends at the home of David Willoughby ("Mr. Willoughby"). At approximately 9:00 p.m., Defendant arrived at the birthday party and began drinking alcoholic beverages with the other guests. While the record is unclear regarding the exact amount of alcohol he consumed, Defendant was seen taking several shots of tequila.

Sometime before midnight, Defendant and Joel got into a heated discussion regarding finances, which escalated into a physical altercation, requiring several of the other men at the party to separate them. Defendant and Joel continued to argue back and forth as Defendant was ushered out of the house and told to leave. Defendant walked to his truck and drove away. After Defendant left, he and Joel continued to send text messages back and forth to each other. Joel told a friend, Clyde Griffin ("Mr. Griffin"), that Defendant had sent him a

text message stating that he was coming back to the party and bringing a friend.

Approximately 45 minutes after he had left the party, Defendant returned. Defendant sent Joel a text message telling him to come outside. Mr. Griffin and Mr. Willoughby went outside to ask Defendant to leave while Joel stayed inside the house. Defendant stood by his truck in the road in front of the house with his hands in his coat pockets. As Mr. Griffin and Mr. Willoughby approached him, Defendant repeatedly warned them not to "walk up" on him. Mr. Griffin testified that Defendant then stated "he was going to leave Joel dead in the road."

When Joel came outside, he and Defendant resumed their argument, standing approximately a foot apart from one another. Mr. Griffin was standing in between Defendant and Joel in an attempt to keep them apart when he heard three gunshots. The shots were fired from Defendant's left-hand coat pocket. Bullets struck Joel in his chest, upper leg, and hand. A firearm analysis performed by the State Bureau of Investigation ("SBI") determined that the gun required a separate trigger pull for each shot fired.

After firing the shots, Defendant calmly walked back to his truck and drove to a bar approximately eight miles away. Defendant later went to the home of a friend, Douglas Crawford

("Mr. Crawford"), and told Mr. Crawford what he had done. Mr. Crawford drove Defendant to the police station to turn himself in. Defendant admitted to police officers that he had shot Joel and said that he felt bad about the incident.

A search warrant was obtained for Defendant's truck, and officers found a revolver in the vehicle. Testing conducted by the SBI revealed that a bullet recovered from the crime scene had been fired from the revolver found in Defendant's truck. In addition, gunshot residue was found on Defendant's hands.

Defendant was indicted on charges of attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury, and malicious assault in a secret manner. The case proceeded to trial in Rockingham County Superior Court on 8 April 2013. Defendant was convicted by a jury on all three charges and sentenced to a term of 180 to 225 months imprisonment. Defendant appealed to this Court.

## Analysis

### I. Instruction on Voluntary Intoxication

Defendant first argues that the trial court erred in denying his request for a jury instruction on voluntary intoxication. We disagree.

On appeal, arguments "challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by

this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "The trial court must give a requested instruction when supported by the evidence in the case." *State v. Soles*, 119 N.C. App. 375, 382, 459 S.E.2d 4, 9, *appeal dismissed and disc. review denied*, 341 N.C. 655, 462 S.E.2d 523 (1995).

> Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried "defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. In [the] absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon."

*State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545 (quoting *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987)), *appeal dismissed and disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002). When determining whether the evidence is sufficient to support an instruction on voluntary intoxication, the evidence must be viewed "in the light most favorable to defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988).

Defendant relies on testimony by the State's witnesses tending to show that he was intoxicated and impaired to some

degree on the night in question. Based on our review of the record, we believe that while the evidence shows that Defendant was intoxicated, the evidence falls short of showing that at the time of the shooting, Defendant was intoxicated to such a degree as to render him utterly incapable of forming the requisite intent to commit the crimes. To the contrary, the record shows that Defendant (1) returned to the residence with a loaded gun after a physical altercation with Joel; (2) stated that "he was going to leave Joel dead in the road"; (3) fired the gun three times at point blank range; and (4) hit Joel with all three shots. Moreover, after shooting Joel, Defendant was able to recognize the gravity of what he had done, admitting to law enforcement officers that he had shot his son and stating that he felt bad for having done so.

Even viewing the evidence in the light most favorable to Defendant, we conclude that he failed to produce sufficient evidence to show that at the time of the shooting, he was so completely intoxicated that he was utterly incapable of forming the requisite intent to commit the crimes for which he was convicted. Accordingly, the trial court did not err in refusing to give an instruction on voluntary intoxication.

Defendant takes issue with the trial court's statement that it was not "convinced" that Defendant had demonstrated that he

was utterly incapable of forming the requisite intent to commit the crimes charged, arguing that the trial court usurped the jury's fact-finding role. Defendant contends that the trial court need not itself be convinced that Defendant's intoxication rendered him utterly incapable of forming the requisite intent, and that instead, the court need only determine whether there was substantial evidence that Defendant was utterly incapable of forming the requisite intent. However, in order to be entitled to an instruction on voluntary intoxication, a defendant "must produce substantial evidence which would support a *conclusion by the judge* that he was so intoxicated that he could not form a deliberate and premeditated intent to kill." *Mash*, 323 N.C. at 346, 372 S.E.2d at 536 (emphasis added).

Therefore, we are satisfied the trial court did not err in stating that it was not convinced that Defendant had met his burden of production. Accordingly, Defendant's argument on this issue is overruled.

## II. Ineffective Assistance of Counsel

Defendant next contends that he received ineffective assistance of counsel. Defendant's argument is two-fold. He first asserts that his trial counsel provided inadequate representation by promising in his opening statement that the jury would not hear any evidence of intent by Defendant to

commit the crimes for which he was charged despite the existence of ample circumstantial evidence of Defendant's intent to kill Joel. Defendant also argues that his counsel's error was compounded when counsel elicited testimony from Joel regarding whether he believed Defendant was trying to kill him.

In order to establish ineffective assistance of counsel, a defendant must show: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (citation and quotation marks omitted). Our Supreme Court has further explained that "[t]he fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 563, 324 S.E.2d at 248. "Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

In light of the overwhelming evidence of Defendant's guilt, we conclude that there is no reasonable probability that the

outcome of Defendant's trial would have been different had defense counsel not engaged in the actions complained of by Defendant. The evidence at trial showed that after a physical altercation with Joel and being asked to leave the residence where Joel was present, Defendant continued to send Joel antagonistic text messages. Defendant then returned with a loaded gun in his coat pocket and stated "he was going to leave Joel dead in the road." Defendant shot Joel three times at point blank range and then calmly walked back to his truck and drove away. Following the shooting, Defendant realized the gravity of his actions and admitted to law enforcement officers that he had shot Joel. Based on the abundant evidence of guilt presented at trial, we conclude that Defendant's ineffective assistance of counsel claim lacks merit.

## Conclusion

For these reasons, we conclude that Defendant received a fair trial free from error.

NO ERROR.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).