NO. COA14-8

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

   v.

WINSTON HARVEY STEPHENS, JR.

Forsyth County
Nos. 11 CRS 62234
      11 CRS 62605

Appeal by defendant from judgments entered 6 May 2013 by Judge V. Bradford Long in Forsyth County Superior Court. Heard in the Court of Appeals 6 May 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General David Gordon, for the State.*
>
> *Mark Montgomery for defendant.*

HUNTER, Robert C., Judge.

Defendant Winston Harvey Stephens, Jr. appeals the judgments entered after a jury convicted him of three counts of indecent liberties with a student. On appeal, defendant argues that: (1) the trial court erred in not instructing the jury on the specific acts set out in the amended bills of particulars; and (2) the trial court erred in denying defendant's motion to dismiss because the victim was not a "student" at the time of the incidents.

After careful review, we find no error.

**Background**

The State's evidence at trial tended to establish the following: In the spring of 2011, J.B.[1] was a sophomore at East Forsyth High School ("East Forsyth"). Defendant was East Forsyth's music teacher. J.B. claimed that he met defendant when he was attending Madrigal workshops, choral training workshops for students at East Forsyth; defendant was the director of the Madrigals. J.B. auditioned for and was accepted into the Madrigals program which would begin in the fall semester. At trial, J.B. claimed that defendant contacted him to see whether J.B. would be interested in helping him during the summer. Specifically, defendant needed a page turner and assistant to help him record music for "Joseph and the Amazing Technicolor Dream Coat," a musical scheduled to be performed at Reynolds High School ("Reynolds") during a special Summer Enrichment Program ("SEP"). After he agreed, J.B. claimed that defendant picked him up every morning and brought him home in the afternoon, around 3:00. This occurred over a two-week period in July 2011; the performance of the musical occurred on three days at the end of July.

---

[1] To protect the identity of the minor victim, we have used initials.

At trial, J.B. gave detailed testimony regarding numerous alleged incidents of inappropriate sexual conduct between defendant and J.B. Specifically, J.B. claimed that the first incident occurred in the recording room at Reynolds. J.B. testified that defendant grabbed his arm and kissed it before giving him a full-frontal hug that lasted ten to twenty seconds. J.B. also described two incidents of "cuddling" that happened in the recording room at Reynolds; J.B. stated that he laid on the couch with his back to defendant's stomach while defendant would brush his hair and hold him tightly. J.B. claimed that these incidents lasted anywhere from fifteen minutes to an hour. J.B. also alleged that two other incidents of "cuddling" occurred at J.B.'s apartment—one on the couch in the living room and one on J.B.'s bed.

J.B. testified that incidents of full-frontal hugging happened on a consistent basis during the two-week period at Reynolds. He also alleged that defendant kissed him on his arm, cheek, and neck ten to fifteen times and on his mouth twice. All these incidents allegedly occurred in the recording room, orchestra pit, or on the stage deck at Reynolds. J.B. also claimed that defendant hugged him in the bathroom at Reynolds.

J.B. further testified that several incidents occurred in defendant's car on the way to and from the SEP at Reynolds. Specifically, J.B. claimed that he and defendant would hold hands, defendant would brush his hair at stoplights, and defendant would lean over and kiss his neck and cheek daily. J.B. alleged that one final "cuddling" incident occurred on the couch in defendant's office at East Forsyth.

At trial, J.B. also provided a great deal of testimony regarding intimate communications between himself and defendant. Specifically, in one email, defendant referred to J.B. as a "stud muffin" and a "manly man." He also claimed to "love feeling [J.B.'s] soft skin when [their] arms touch[ed]." Furthermore, J.B. described the pet names they had for each other and the gifts they exchanged with each other.

In October, after school had resumed, J.B. told his mother about the incidents. She withdrew him from the Madrigals course but did not report the incidents to the school. Eventually, J.B. spoke with the Kernersville Police Department about the allegations after he was called to the principal's office and questioned.

On 25 June 2012, defendant was indicted for three counts of indecent liberties with a student. On 25 April 2013, the State

filed three amended bills of particulars. The State contended that the alleged offenses occurred during the month of July 2011 at J.B.'s residence, at defendant's apartment, in defendant's car, and in the orchestra pit and recording room at Reynolds. As for the acts that constituted the offenses, the State listed numerous acts, including: hugging, kissing, cuddling, and various other types of inappropriate touching by defendant.

At trial, several witnesses testified on behalf of defendant including several students, a teacher, defendant's wife, and defendant himself. In short, the witnesses testified that defendant was a "father figure" to the students and would often hug students in a nonsexual way. In addition, several witnesses testified that defendant would not have had the opportunity to commit any inappropriate acts with J.B. during the SEP. Although defendant admitted that some of his behavior might have been "inappropriate," he denied any misconduct.

On 6 May 2013, the jury found defendant guilty on all three counts. The trial court sentenced defendant to consecutive sentences of six to eight months imprisonment but suspended the sentences for thirty-six months of supervised probation. Defendant appealed.

**Arguments**

First, defendant argues that the trial court erred by not instructing the jury according to the amended bills of particulars filed by the State. Specifically, defendant contends that the trial court erred in failing to instruct the jury on the *actus reus* of each charge. We disagree.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

"The function of a bill of particulars is to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry." *State v. Young*, 312 N.C. 669, 676, 325 S.E.2d 181, 186 (1985). Here, the amended bills of particulars set out numerous acts that constituted the basis for the offenses, including: hugging and kissing at Reynolds; "cuddling" with J.B. at Reynolds; hugging, holding hands, and groping J.B.'s crotch in defendant's car; hugging and kissing J.B. at J.B.'s home; and "cuddling" with J.B. in his bedroom. At trial, defendant requested the trial court instruct the jury on the *actus reus* for each count. However, the trial court held that it was not required to do so for indecent liberty charges.

Defendant contends that the trial court's failure to instruct as to the acts set out in the amended bills of particulars constituted error.

However, defendant's argument is without merit. It is well-established that

> the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts. The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire. Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial. It is important to note that the statute does not contain any language requiring a showing of intent to commit an unnatural sexual act. Nor is there any requirement that the State prove that a touching occurred. Rather, the State need only prove the taking of any of the described liberties for the purpose of arousing or gratifying sexual desire.

*State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180-81 (1990) (internal quotation marks omitted).

Here, the trial court properly instructed the jury that it could find defendant guilty if it concluded that defendant willfully took "*any* immoral, improper, or indecent liberties" with J.B. The actual act by defendant committed for the purpose of arousing himself or gratifying his sexual desire was

"immaterial." *Id*. Furthermore, J.B.'s testimony included numerous acts, any one of which could have served as the basis for the offenses, and the amended bills of particulars reflected his testimony. Accordingly, the trial court did not err in not instructing the jury as to the *actus reus* for each count of indecent liberties with a student.

Next, defendant argues that the trial court erred in denying his motion to dismiss because there was insufficient evidence that J.B. was a "student" during the summer. Specifically, defendant contends that J.B. was not "enrolled" at East Forsyth at the time of the incidents because a person is "enrolled" only during the academic school year. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455.

At trial, the court instructed the jury that a "student," for purposes of N.C. Gen. Stat. 14-202.4(A), means "a person enrolled in kindergarten, or in grade one through 12 in any school." Defendant contends that a person is only "enrolled" during the academic year; thus, since the offenses occurred during the summer, J.B. was not enrolled, nor was he a student, at East Forsyth. In support of his argument, defendant claims that each school completes an "Initial Enrollment" count at the beginning of each school year, and students do not become enrolled at a school until that initial count.

However, at trial, Patricia Gainey, the principal of East Forsyth, testified that students remain enrolled at her school until a parent withdraws them. Although students are required to register for fall classes during the spring, students remain in the school's database until a parent "signs them out." J.B.'s mother testified at trial that J.B. had registered for his fall classes in April or May 2011, the spring before the incidents occurred. Since J.B.'s mother did not withdraw him from East Forsyth until the end of the 2011 school year (June 2012), he remained enrolled at East Forsyth during the summer of 2011 even though he was not taking classes at that time. In other words, he remained in East Forsyth's database, and, thus,

remained enrolled, until June 2012. Therefore, during the summer, although the academic year was over, he was an enrolled student at East Forsyth. Accordingly, the trial court did not err in instructing the jury that a "student" includes anyone enrolled in a school and in denying defendant's motion to dismiss because the State presented substantial evidence that J.B. was a student at the time of the offenses.

## Conclusion

Based on the foregoing reasons, we conclude that defendant's trial was free from error.

NO ERROR.

Judges McGEE and ELMORE concur.