DIETZ, Judge.
Defendant Daniel Lee Weeks appeals from convictions of first degree kidnapping, first degree burglary, and conspiracy to commit first degree burglary. The State alleged that Weeks and his brother entered the victim's home and that Weeks's brother severely beat the victim, gouged him in the eyes, and kept him pinned on the floor while Weeks rummaged through the victim's possessions, stealing a camera and some money.
On appeal, Weeks argues that the trial court erred in denying his motion to dismiss the charges. He also argues that the trial court erred in instructing the jury on the doctrine of recent possession.
For the reasons discussed below, we hold that there was sufficient evidence to send the charges to the jury. We also hold that there was sufficient evidence to support the jury instruction on the doctrine of recent possession. Accordingly, we find no error.
Facts and Procedural History
At 5:30 p.m. on 27 February 2012, the victim, Dennis Tomlinson, saw Defendant Daniel Lee Weeks on his property. Tomlinson told Weeks, "You're not supposed to be here" and that Weeks's brother, David, was not allowed on the property either. Weeks then left Tomlinson's property.
Around 8:30 p.m., Tomlinson was watching television in his home when he heard a noise outside. Tomlinson's front door and screen door were closed, but not locked. Tomlinson testified that his front door suddenly "came flying open" and Weeks and his brother David entered Tomlinson's home without permission. David ran at Tomlinson with Weeks right behind him. David hit and kicked Tomlinson in the head, knocking him to the ground. David then grabbed Tomlinson, picked him up, put him on the couch, and gouged his eyes "to the point that [he] could not see." Tomlinson fought back and told his attackers, "Y'all need to get out of here." Instead of leaving, David gouged Tomlinson's eyes again, hit him, and pushed him to the ground where the two men continued to struggle. At one point David stated, "Let's see what you got karate boy." Tomlinson testified that while David beat him, Weeks was standing somewhere behind the two, watching the fight.
As the scuffle continued, Tomlinson grabbed David and pulled him to the ground. As Tomlinson reached up to hit David, Weeks intervened by hitting Tomlinson from behind and knocking him off of his brother.
David then pinned Tomlinson between some furniture and held him down, punching him repeatedly in the face and saying "Don't ... [y]ou ... [e]ver tell me what I can do and can't do." When Tomlinson grabbed David's arms to stop the beating, David started kicking and stomping him in the head with the heel of his shoe.
During this time, Tomlinson heard Weeks "rummaging through my stuff, my drawers, my toolbox, my kitchen cabinets." After about 15 minutes, Weeks told David, "That's enough, we need to go." Weeks and his brother then left Tomlinson's home.
Tomlinson was badly injured. It took him 15 minutes to crawl to his cell phone 20 feet away and call 911. When law enforcement arrived, they took pictures of Tomlinson's injuries, which were later introduced at trial. Tomlinson told the officers "that David and Daniel Weeks were involved" and that they might be next door. After looking around his home, Tomlinson discovered that a digital camera was missing from his table and $25 had been taken from his wallet. Officer Steve Hunt found Weeks next door. During a consensual search, Officer Hunt found "20 something dollars" in Weeks's pocket and detained him. In his police statement, Weeks wrote that he only entered Tomlinson's home to stop his brother David from attacking Tomlinson.
On 12 March 2012, the State indicted Weeks on charges of first degree burglary and larceny after breaking and entering. The State later added charges of first degree kidnapping, conspiracy to commit first degree burglary and kidnapping, and common law robbery. The case went to trial on 17 July 2014.
At trial, the State presented testimony from Tomlinson, the responding EMS personnel, and the responding police officers. The State also introduced pictures of Tomlinson's injuries and the EMS report.
At the close of the State's evidence, Weeks's counsel made a motion to dismiss, "ask[ing] the Court to consider dismissals at the close of the State's evidence." Weeks's argument in support of dismissal only addressed the burglary charge. The trial court denied the motion to dismiss.
Defense counsel presented testimony from Weeks's brother, David. David testified that he had gone to Tomlinson's house on the night in question to buy marijuana. David admitted that he "gouged [Tomlinson's] eyes," "hit him," and "kicked him in [the] mouth," but stated that it was because they had gotten into a fight over the price of the marijuana. David testified that Weeks was not with him when he entered Tomlinson's house, but that Weeks arrived after the fight broke out and told David to get off of Tomlinson and leave.
At the close of all the evidence, Weeks's counsel moved to dismiss the burglary, kidnapping, and conspiracy charges. The trial court again denied Weeks's motions to dismiss.
At the State's request, the trial court instructed the jury on the doctrine of recent possession with regard to the money found in Weeks's pocket. Weeks's counsel objected to instructing the jury on the doctrine of recent possession, stating, "I would just argue that the money is nondescript" and "[f]or the record, I would make the objection to the recent possession." Over Weeks's objection, the trial court instructed the jury that
[t]he State seeks to establish the defendant's guilt by the doctrine of recent possession. For this doctrine to apply, the State must prove three things beyond a reasonable doubt. First, that the property was stolen. Second, that the defendant had possession of this property. A person possesses property when that person is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use. Third, that the defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that the defendant obtained possession honestly. If you find these things from the evidence beyond a reasonable doubt, you may consider them together with all other facts and circumstances in deciding whether or not the defendant is guilty of robbery larceny or burglary.
The jury convicted Weeks of first degree burglary, first degree kidnapping, and conspiracy to commit first degree burglary. The jury acquitted Weeks of larceny after breaking and entering and common law robbery. The trial court sentenced Weeks to 67 to 93 months imprisonment. Weeks timely appealed.
Analysis
I. Denial of Weeks's Motions to Dismiss
This Court reviews the trial court's denial of a motion to dismiss de novo. State v. Smith,186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007). A defendant's motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Fritsch,351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith,300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In determining whether there is substantial evidence, "the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose,339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994). "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." Fritsch,351 N.C. at 379, 526 S.E.2d at 455.
"Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." Id.Where the evidence is circumstantial, "the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." Id.If "a reasonable inference of defendant's guilt may be drawn from the circumstances," then the motion to dismiss should be denied and the charge should go to the jury. Id.
a. Motion to Dismiss First Degree Kidnapping Charge
Weeks first argues that the trial court erred in denying his motion to dismiss the first degree kidnapping charge because "[t]here was no evidence that Mr. Weeks or his brother intended to terrorize, or did in fact terrorize" the victim. As explained below, we reject this argument because the State presented sufficient evidence to show that Weeks's brother David had the intent to terrorize Tomlinson and that Weeks acted in concert with his brother.[1]
"Kidnapping is a specific intent crime, and therefore the State must prove that defendant unlawfully confined, restrained, or removed the victim for one of the purposes outlined in the statute." State v. Rodriguez,192 N.C.App. 178, 187, 664 S.E.2d 654, 660 (2008). One of the purposes listed in the statute is "terrorizing the person so confined, restrained or removed." N.C. Gen.Stat. § 14-39(a)(3). But, notably, "[o]ur Supreme Court has expressly rejected the concept that for a defendant to be convicted of a crime under an acting in concert theory, he must possess the mens reato commit that particular crime." State v. Bellamy,172 N.C.App. 649, 668, 617 S.E.2d 81, 95 (2005). The "doctrine of acting in concert" provides that
[i]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose ... or as a natural or probable consequence thereof.
State v. Mann,355 N.C. 294, 306, 560 S.E.2d 776, 784 (2002) (internal quotation marks omitted). Under this theory of criminal liability, the kidnapping charge could survive the motion to dismiss if the State presented substantial evidence that Weeks's brother possessed the requisite intent to terrorize and the kidnapping was in pursuance of their common purpose to commit other crimes during the break-in.
"Intent is a condition of the mind" and ordinarily can be proved "only by circumstantial evidence. Evidence of a defendant's actions following restraint of the victim is some evidence of the reason for the restraint." State v. Piggott,331 N.C. 199, 211, 415 S.E.2d 555, 562 (1992). "The presence or absence of the defendant's intent or purpose to terrorize [the victim] may be inferred by the fact-finder from the circumstances surrounding the events constituting the alleged crime." State v. Baldwin,141 N .C.App. 596, 605, 540 S.E.2d 815, 821 (2000). In determining whether there is sufficient evidence of intent to terrorize, "the test is not whether the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize [him]." State v. Moore,315 N.C. 738, 745, 340 S.E.2d 401, 405 (1986). Terrorizing is defined as "more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension." Id."[T]he victim's subjective feelings of fear, while not determinative of the defendant's intent to terrorize, are relevant." Baldwin,141 N.C.App. at 604, 540 S.E.2d at 821.
Here, there was substantial evidence that David possessed the intent to terrorize Tomlinson. The State presented testimony that David broke into Tomlinson's home at night, gouged Tomlinson's eyes so he could not see, and then brutally attacked him. Among other things, David punched Tomlinson repeatedly in the face, kicked him in the head, pinned him on the ground, and trapped him between furniture so he could not escape. While this was going on, David taunted Tomlinson with comments such as "Let's see what you got karate boy" and "Don't ... [y]ou ... [e]ver tell me what I can do and can't do." This is sufficient evidence that David intended to put Tomlinson in a state of intense fear and apprehension to warrant sending the issue to the jury.
The State also presented substantial evidence that Weeks and his brother were acting in concert. After Tomlinson kicked Weeks off his property earlier in the day, Weeks and his brother David "came back together" that night and broke into Tomlinson's home. During David's violent attack on Tomlinson, Weeks stood by and watched, at one point intervening to prevent Tomlinson from hurting his brother. Finally, as explained in more detail below, the State presented substantial evidence that Weeks and his brother broke into Tomlinson's home for the purpose of committing larceny. We find that this constitutes sufficient evidence from which a jury could infer that Weeks and David were acting in concert when David attacked Tomlinson with the intent to terrorize him.
In sum, when viewed in the light most favorable to the State, the State's evidence was sufficient for a reasonable jury to infer that David had the intent to terrorize Tomlinson and that Weeks was acting in concert with David. Accordingly, the trial court did not err in denying the motion to dismiss the kidnapping charge.
b. Motion to Dismiss First Degree Burglary Charge
Weeks next argues that the trial court erred in denying his motion to dismiss the first degree burglary charge because "the State presented no evidence that Mr. Weeks or his brother had the intent to commit larceny before entering Tomlinson's residence." We reject this argument for the reasons discussed below.
"First-degree burglary is the breaking or entering of an occupied dwelling at night with intent to commit a felony therein." State v. Montgomery,331 N.C. 559, 568, 417 S.E.2d 742, 747 (1992). Here, the indictment alleged that Weeks broke into Tomlinson's home "with the intent to commit ... larceny therein ." "Intent being a mental attitude, it must ordinarily be proven ... by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." State v. Smith,211 N.C. 93, 95, 189 S.E.2d 175, 176 (1937). "It must ordinarily be left to the jury to determine, from all the facts and circumstances, whether or not the ulterior criminal intent existed at the time of the breaking and entry." Id.
"[E]vidence of what a defendant does after he breaks and enters a house is evidence of his intent at the time of the breaking and entering." State v. Gray,322 N.C. 457, 461, 368 S.E.2d 627, 629 (1988). "[T]he fact that a felony was actually committed after the house was entered is not necessarily proof of the intent requisite for the crime of burglary," but it is "evidence from which such intent at the time of the breaking and entering may be found." State v. Bell,285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974). Under this principle, "[t]he intent to commit larceny may be inferred from the fact that the defendant committed larceny." State v. Thompkins,83 N.C.App. 42, 43, 348 S.E.2d 605, 606 (1986).
Here, the State presented sufficient evidence from which a jury could infer that Weeks intended to commit larceny when he entered Tomlinson's home. The State offered evidence that Weeks broke into Tomlinson's home; that while David beat Tomlinson, Weeks rummaged through Tomlinson's possessions; that after Weeks left, a camera had been taken from Tomlinson's table and $25 was missing from his wallet; and that shortly thereafter, the police found Weeks next door with "20 something dollars" in his pocket. The evidence in this case is analogous to Montgomery,where our Supreme Court held that "[t]he State's evidence tending to show that the defendant stole money from a pocketbook after he entered the apartment was substantial evidence that he had the intent to commit larceny when he entered the apartment." 331 N.C. at 568-69, 417 S.E .2d at 747. Under Montgomery,we find that the State presented substantial evidence from which a jury could infer that Weeks intended to commit larceny when he entered Tomlinson's home. Therefore, the trial court did not err in denying the motion to dismiss.
c. Motion to Dismiss Conspiracy to Commit Burglary Charge
Weeks also argues that the trial court erred in denying his motion to dismiss the conspiracy to commit first degree burglary charge "because the State failed to prove an agreement to commit burglary" between Weeks and his brother. Again, we reject this argument.
The essential element of conspiracy "is the agreement to commit a substantive crime." State v. Medlin,86 N.C.App. 114, 121, 357 S.E.2d 174, 178 (1987). However, "[i]t is not necessary to constitute the offense that the parties should have come together and agreed in express terms to unite for a common object. A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense." State v. Smith,237 N.C. 1, 16, 74 S.E.2d 291, 301 (1953). Direct proof of a conspiracy is not required. State v. Whiteside,204 N.C. 710, 712, 169 S.E.2d 711, 712 (1933). A conspiracy is generally "established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." Id.
Here, taking the evidence in the light most favorable to the State, the State presented evidence that Weeks and his brother broke into Tomlinson's home together at night; that David trapped Tomlinson on the floor and beat him while Weeks rummaged through Tomlinson's possessions and stole things; and that David only stopped beating Tomlinson when Weeks said, "That's enough, we need to go."
From these circumstances, a reasonable jury could infer that Weeks and David had some sort of agreement, whether express or implied, to break into Tomlinson's home together and for one of them to incapacitate Tomlinson while the other stole his property. Accordingly, we find that the trial court did not err in denying the motion to dismiss the conspiracy to commit burglary charge because the State presented sufficient evidence to survive the motion.
II. Jury Instruction on Doctrine of Recent Possession
Finally, Weeks argues that the trial court erred in instructing the jury on the doctrine of recent possession. Weeks contends that the instruction "was inappropriate because the State failed to establish that the money in Mr. Weeks' possession was the currency stolen from Tomlinson." We disagree.[2]
Arguments "challenging the trial court's decisions regarding jury instructions are reviewed de novoby this Court." State v. Osorio,196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009). A jury instruction "must be based on sufficient evidence" to support giving that instruction. Id.
The doctrine of recent possession "is simply a rule of law that ... possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property." State v. Maines,301 N.C. 669, 673, 273 S.E.2d 289, 293 (1981). The presumption applies "when, and only when, the State shows beyond a reasonable doubt: (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others ...; and (3) the possession was recently after the larceny." Id.at 674, 273 S.E.2d at 293. "The presumption is strong or weak depending upon the circumstances of the case." Id.at 673, 273 S.E.2d at 293.
Although the doctrine of recent possession "has been said to raise a 'presumption,' it is more accurately deemed to raise a permissible inference that the possessor is the thief." State v. Joyner,301 N.C. 18, 28, 269 S.E.2d 125, 132 (1980). "The inference derived from recent possession is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State" has proved defendant's guilt beyond a reasonable doubt. State v. Fair,291 N.C. 171, 173, 229 S.E.2d 189, 190 (1976) (internal quotation marks omitted).
Here, the trial court correctly instructed the jury that
[f]or this doctrine to apply, the State must prove three things beyond a reasonable doubt. First, that the property was stolen. Second, that the defendant had possession of this property. A person possesses property when that person is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use. Third, that the defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that the defendant obtained possession honestly. If you find these things from the evidence beyond a reasonable doubt, you may consider them together with all other facts and circumstances in deciding whether or not the defendant is guilty of robbery larceny or burglary.
Notably, this instruction did not tell the jury that the recent possession inference necessarily applied in this case. Rather, it merely stated that the jury could consider the inference ifit found that the State had satisfied the prerequisites to its application. It was left to the jury to determine whether the State had proven those prerequisites, including the determination that the money found in Weeks's pocket was, in fact, the money stolen from Tomlinson's wallet.
The State presented sufficient evidence to support this instruction. The State's evidence showed that Weeks broke into Tomlinson's home; that he rummaged through Tomlinson's possessions; that moments after Weeks left, $25 was missing from Tomlinson's wallet; and that police found Weeks next door a short time later and recovered "20 something dollars" from his pocket. This was circumstantial evidence from which a jury could properly infer that the money in Weeks's pocket was the stolen money from Tomlinson's wallet. See State v. McCoy,79 N.C.App. 273, 278, 339 S.E.2d 419, 423 (1986). As a result, the trial court did not err by instructing the jury on the doctrine of recent possession.
Conclusion
For the reasons discussed above, we hold that the trial court did not err in denying Weeks's motions to dismiss or in instructing the jury on the doctrine of recent possession.
NO ERROR.
Judges BRYANT and STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgments entered 18 July 2014 by Judge James W. Morgan in Cleveland County Superior Court. Heard in the Court of Appeals 19 May 2015.

The State asserts that Weeks failed to preserve this issue by failing to move on this ground at the close of the State's evidence. But Weeks was not required to move to dismiss at the close of the State's evidence in order to preserve this issue. "A defendant may make a motion to dismiss the action ... at the conclusion of all the evidence, irrespective of whether defendant made an earlier such motion. If the motion at the close of all the evidence is denied, the defendant may urge as ground for appeal the denial of the motion made at the conclusion of all the evidence." N.C. R.App. P. 10(a)(3) ; see also N.C. Gen.Stat. § 15-173 (2013). Here, Weeks's counsel moved to dismiss the kidnapping charge at the close of all the evidence and the motion was denied. Therefore, the issue was preserved for appeal and we will review it.

Again, the State mistakenly contends that this issue was not properly preserved for appeal. The State asserts that "Defendant did not object to the court's instruction on recent possession and does not argue plain error." This is wrong. During the charge conference, Weeks's counsel stated, "For the record, I would make the objection to the recent possession" and "I would just argue that the money is nondescript." This objection and accompanying reasoning is sufficient to preserve the issue for appeal. N.C. R.App. P. 10(a)(2).