STATE OF NORTH CAROLINA v. JERRY MAINES

No. 118

(Filed 6 January 1981)

**1. Larceny § 7.4— possession of recently stolen property**

The presumption spawned by possession of recently stolen property arises when, and only when, the State shows beyond a reasonable doubt that the property described in the indictment was stolen; the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others, though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods; and the possession was recently after the larceny, mere possession of stolen property being insufficient to raise the presumption of guilt.

**2. Burglary and Unlawful Breakings § 5.9; Larceny 7.4— breaking and entering and larceny — possession of recently stolen property**

Evidence was insufficient to support the conviction of defendant of felonious breaking and entering and larceny under the doctrine of possession of recently stolen property where it tended to show that defendant was one of four persons in a car which contained stolen goods; the State did not demonstrate a criminal conspiracy among the four; only one of the four claimed a possessory interest in the stolen goods; that person also owned the car; in order to convict defendant, the jury must infer that he possessed the goods from the mere fact of driving with the owner of the car seated beside him, and then infer he was the thief that stole them based on the possession of recently stolen goods, and such a conviction based on stacked inferences could not stand.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from decision of the Court of Appeals, 48 N.C. App. 166, 268 S.E.2d 268 (1980), upholding judgment of *McConnell, J.*, entered 18 October 1979, ASHE Superior Court.

Defendant Maines and a man named Steve Dunn were charged in separate bills of indictment with felonious breaking and entering and felonious larceny. Each bill alleged that the defendant therein named broke and entered a building occupied by Pauline Milam and used as a retail grocery in Ashe County with the intent to commit a felony therein, to wit, larceny; and further charged that on 6 July 1979 each defendant, after feloniously breaking and entering the building, unlawfully, willfully and feloniously breaking and entering the building, unlawfully, willfully and feloniously stole, took and carried away thirty-five cartons of assorted cigarettes, frozen pizzas, hamburgers and hotdogs, eight men's caps, one necklace, one carton JOBS rolling papers for cigarettes, five cases of Mountain Dew, one coat, one checkbook, and Avon toothbrushes, the personal property of Pauline Milam, having a value of Five Hundred Dollars in violation of G.S. 14-72.

The State's evidence tends to show that between 9 p.m. on 5 July 1979 and 9 a.m. on 6 July 1979, Pauline Milam's Grocery was broken and entered. A number of items including an old blue coat, cigarettes, a necklace, cigarette rolling papers, Avon products and toothbrushes were stolen.

The old blue coat (State's Exhibit 3) was definitely identified by Pauline Milam as her coat. She recognized certain distinctive features involving ripped pockets on it. The necklace (State's Exhibit 4), the toothbrushes (State's Exhibit 5), the cigarette papers (State's Exhibit 6), the cap or caps (State's Exhibit 7), the cartons of cigarettes (State's Exhibit 8) and a number of loose packs of cigarettes (State's Exhibit 9), were not definitely identified since these items are all mass produced. However, the testimony is that they were of the same type as those stolen from the Milam store.

The State's evidence further tends to show that on 7 July 1979 at 10:25 p.m., defendant Maines and Steve Dunn were observed in a Pontiac car in a Boone parking lot. The car was owned by Steve Dunn but operated at the time by Maines. Dunn was in the front passenger seat and two other men were riding in the rear seat of the car. Detecting a strong odor of alcohol on defendant Maines, the officers took all parties to the police station in Boone. While there, a message was received about the Milam break-in and Dunn, as owner of the vehicle, was requested to sign a consent to search form, which he did after being informed of his constitutional rights. The police searched the vehicle and found paper bags containing cigarettes and cigarette papers in the trunk of the car. A blue nylon

windbreaker coat was found in the back seat of the car and two new toothbrushes were found in the closed glove compartment. The officers seized a necklace worn by Dunn around his neck. A cap with the word "Ford" on the front of it was taken from one of the rear seat passengers who was wearing it on his head. In a statement to the sheriff, Steve Dunn claimed ownership of the necklace, toothbrushes and the coat.

Both Jerry Maines and Steve Dunn testified for the defense, and each offered the testimony of other witnesses as well.

Jerry Maines testified that on 5 July 1979 he spent the night with his uncle James Maines who lived in Zionsville. He said that one Paul Price was at his uncle's home playing cards and that he played cards with them from 6 p.m. until 3 or 4 a.m. the following morning. He further testified that on 7 July 1979, he saw Steve Dunn, who was a friend of his, about 11:30 a.m. Later in the day, they went to West Jefferson in a 1972 Pontiac owned by Steve Dunn. Sometime before dark, he left Steve Dunn in West Jefferson and started hitchhiking to his uncle's home in Zionsville. Later that evening, Steve Dunn and the other two passengers in Dunn's car came along and picked him up between West Jefferson and Deep Gap. Dunn was driving at the time. They stopped at a service station and he, Maines, commenced driving because all of them were drunk, including Maines, but Maines thought he was "the soberest one in the crowd." He had no knowledge of the items found in the trunk and the glove compartment of the car. He saw the cap being worn by one of the passengers in the back seat but did not see the coat or the cigarette papers. He saw the necklace around Dunn's neck, had never seen it before, and in fact had never seen any of the items before and had no knowledge that any of them had been stolen.

Maines admitted he had been convicted of issuing worthless checks, driving under the influence, driving with no operator's license and public drunkenness. He said he had been placed on probation for some of those offenses but went to Florida and failed to come back in violation of the terms of his probation. He is twenty-six years of age and unemployed.

Paul Price testified that he had known Jerry Maines for twenty years; that he saw Maines on Thursday, 5 July 1979, at his uncle's home; that they started playing cards around 6:30 or 7 p.m. and played six or seven hours, maybe longer; that when the card game was over they went to Price's apartment and had breakfast.

Steve Dunn testified that he did not know Mrs. Milam, never broke into her store and never stole any of her property on the night of July 5 and 6, 1979, or at any other time. He said the necklace taken from around his neck was purchased by him in Albuquerque, New Mexico from a man named Kevin Kilpatrick. The tooth-brushes taken from the glove compartment of his car were bought by him in Fairmont, Georgia from a woman who runs the motel there where he stays. He got some of the cigarettes from his mother and the remainder of them at a store in Lenoir, the name of which he did not know. He was in the company of Mr. Ivan Lewis when he bought them Thursday evening, 6 July 1979 at about 9 to 10 o'clock. He said cigarettes cost five dollars a carton in Georgia and the people where he worked had asked him to bring some cigarettes back and for that reason he had purchased several cartons. He said he was too drunk to drive when, after picking Maines up, he turned the car over to him. He admitted he told Sheriff Waddell: "The blue coat in the car is mine." He explained that he had a coat just like it with the words "Appalachian State University" on it, and he thought it was his coat because both were blue and he didn't pick the coat up to look at it when he told the sheriff it belonged to him. "When I made the statement I just thought it was mine."

Dunn admitted he had been convicted of driving under the influence, two possessions of marijuana, attempted aggravated burglary, possession of burglary tools, disorderly conduct and re-sisting arrest. He swore that Jerry Maines was not with him on the night of 5 July 1979 and that he did not see him at any time on 6 July of that year.

Denise Hart testified that she had known Steve Dunn for six years and was with him on 5 July 1979 in Lansing; that she went to Lenoir with him on that date; that they went to the home of Ivan and Terry Lewis and stayed overnight at the Lewis home; that they went back to Ashe County on Friday, July 6th, leaving Lenoir about 8 a.m. and arriving in Ashe County around 10 a.m.; that after attending to some insurance matter, they returned to the Lewis home and spent the night of July 6th there; that she is a criminal justice student at UNC-Charlotte and has no criminal record.

Mr. and Mrs. Ivan Lewis both testified in corroboration of Steve Dunn's testimony with respect to purchasing cigarettes and other items in Boone and spending the night in the Lewis home.

Geneva Calhoun testified she lived in Lansing, knew Steve

Dunn, saw him on 6 July 1979 at the wagon train that comes up from Wilkesboro and camps out "and everybody goes to see"; that she stayed in Dunn's company at the wagon train gathering and, while there, saw State's Exhibit 3, the blue coat, on the ground under a tree; that it was just "lying there on the ground" and, when it started raining, she picked it up, put it around her shoulders and wore it to the car; that she and Steve Dunn left the wagon train together traveling in Steve's 1972 Pontiac; that she took the coat off and laid it in the back seat; that Dunn took her home later that night. She testified that she has no criminal record; that she is twenty-one years of age and works at Sprague Electric; and that she does not know whose jacket she picked up.

The jury found each defendant guilty as charged. Dunn was sentenced to a prison term of eight to ten years and Maines to a term of four to five years. Both appealed to the Court of Appeals, and that court found no error with Hedrick, J., dissenting as to defendant Maines. Jerry Maines thereupon appealed to the Supreme Court as of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General, for the State.*

*Wade E. Vannoy, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

Denial of his motion for judgment of nonsuit at the close of all the evidence constitutes defendant's sole assignment of error. The assignment turns on whether defendant's possession of stolen goods soon after the breaking and entering and larceny is a circumstance tending to show defendant is guilty of the breaking and entering and larceny. We hold the possession shown in defendant Jerry Maines in this case is insufficient to support a verdict of guilty of the breaking and entering and larceny charged in the bill of indictment. Accordingly, this defendant's nonsuit motion should have been granted.

The State relies, as indeed it must in this case, on the doctrine of recent possesson. That doctrine is simply a rule of law that, upon an indictment for larceny, possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property. *State v. Bell,* 270 N.C. 25, 153 S.E.2d 741 (1967); *State v. Allison,* 265 N.C. 512, 144 S.E.2d 578 (1965). The presumption is strong or weak depending upon the circumstances of the case and

the length of time intervening between the larceny of the goods and the discovery of them in defendant's possession. *State v. Williams*, 219 N.C. 365, 13 S.E.2d 617 (1941). Furthermore, when there is sufficient evidence that a building has been broken into and entered and thereby the property in question has been stolen, the possession of such stolen property recently after the larceny raises presumptions that the possessor is guilty of the larceny and also of the breaking and entering. *State v. Lewis*, 281 N.C. 564, 189 S.E.2d 216, *cert. denied* 409 U.S. 1046, 34 L.Ed.2d 498, 93 S.Ct. 547 (1972). The presumption or inference arising from recent possession of stolen property "is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt." *State v. Baker*, 213 N.C. 524, 526, 196 S.E. 829, 830 (1938); *accord, State v. Greene*, 289 N.C. 578, 223 S.E.2d 365 (1976).

Proof of a defendant's recent possession of stolen property, standing alone, does not shift the burden of proof to the defendant. That burden remains on the State to demonstrate defendant's guilt beyond a reasonable doubt. *State v. Baker, supra.* In order to invoke the presumption that the possessor is the thief, the State must prove beyond a reasonable doubt each fact necessary to give rise to the inference or presumption. When the doctrine of recent possession applies in a particular case, it suffices to repel a motion for nonsuit and defendant's guilt or innocence becomes a jury question.

**[1]** In summary then, the presumption spawned by possession of recently stolen property arises when, and only when, the State shows beyond a reasonable doubt: (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods; *State v. Eppley*, 282 N.C. 249, 192 S.E.2d 441 (1972); *State v. Foster*, 268 N.C. 480, 151 S.E.2d 62 (1966); *State v. Turner*, 238 N.C. 411, 77 S.E.2d 782 (1953); *State v. Epps*, 223 N.C. 741, 28 S.E.2d 219 (1943); and (3) the possession was recently after the larceny, mere possession of stolen property being insufficient to raise a presumption of guilt. *State v. Jackson*, 274 N.C. 594, 164 S.E.2d 369 (1968).

The possession sufficient to give rise to such inference does not require that the defendant have the article in his

hand, on his person or under his touch. It is sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it. One who has the requisite power to control and intent to control access to and use of a vehicle or a house has also the possession of the known contents thereof.

*State v. Eppley, supra,* 282 N.C. at 254, 192 S.E.2d at 445 (citations omitted).

**[2]** This case turns upon the second element as outlined above: whether the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others. What amounts to exclusive possession of stolen goods to support an inference of a felonious taking most often turns on the circumstances of the possession. The crucial circumstances of possession in this case are: the goods were found in a car and persons other than defendant were present in the car, including the owner of the vehicle. Both fact situations have been addressed by various courts with varied results. *See Annot.,* 51 A.L.R.3d 727 (1973). The variances in the cases can perhaps be explained by the presence of additional circumstances. When the stolen goods are found in a car in which more than one person is present, the question may narrow to whether the defendant was the owner, driver or mere passenger in the car. In this case Steve Dunn was the owner and passenger in the car and defendant was the driver.

The "exclusive" possession required to support an inference or presumption of guilt need not be a sole possession but may be joint. *State v. Holloway,* 265 N.C. 581, 144 S.E.2d 634 (1965). If the situation is one where persons other than defendant have equal access to the stolen goods, the inference may not arise. For the inference to arise where more than one person has access to the property in question, the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property or other evidence which sufficiently connects the accused person to the crime or a joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all. Stated differently, for the inference to arise, the possession in defendant must be to the exclusion of all persons not party to the crime. The State has not shown such a possession in this case. The

evidence shows four persons in a car which contains stolen goods. The State has not demonstrated a criminal conspiracy among the four. Only one of them, Steve Dunn, claimed a possessory interest in the stolen goods. Dunn also owned the car.

Defendant did not have actual or personal possession of the stolen property. None of the goods were on his person and he did not make any conscious assertion of ownership as did Dunn. Defendant's possession was at most constructive, based on the fact he was driving the car and presumably in control of it and its contents. Thus, to convict defendant, the jury must infer that defendant possessed the goods from the mere fact of driving with the owner of the car seated beside him and then infer he was the thief who stole them based on the possession of recently stolen goods. We hold this criminal conviction cannot stand because it is based on stacked inferences. "Inference may not be based on inference. Every inference must stand upon some clear or direct evidence, and not upon some other inference or presumption." *State v. Parker*, 268 N.C. 258, 262, 150 S.E.2d 428, 431 (1966), *quoting Lane v. Bryan*, 246 N.C. 108, 112, 97 S.E.2d 411, 413 (1957); *accord, State v. Greene, supra.*

In order to take the case against defendant Maines to the jury, the State must show something more than was shown here. For example, the State could make a case sufficient to repel nonsuit by evidence of an attempt by defendant as driver to avoid the officer when he approached the car, or evidence that the property is obviously contraband, or some evidence at the crime scene indicating defendant had been there, or evidence of constant association with or customary use of the car by defendant. No legal presumption that defendant was a thief could arise from merely driving the car with the owner present. *Contrast State v. Lewis*, 281 N.C. 564, 189 S.E.2d 216, *cert. den.*, 409 U.S. 1046, 34 L.Ed.2d 498, 93 S.Ct. 547 (1972).

Under the particular circumstances here, we hold defendant did not have that exclusive possession of the property necessary to justify an inference of guilt. Nonsuit was appropriate. The decision of the Court of Appeals upholding the denial of his motion for nonsuit is

Reversed.

Justice BROCK took no part in the consideration or decision of this case.