THORNBURG, Judge.
Defendant was indicted on one charge of felony larceny and one charge of felony possession of stolen goods. A jury found defendant guilty of both charges. Defendant was sentenced on the felony larceny charge and judgment was arrested on the possession charge. Defendant appeals.
On the morning of 30 May 2001, John Lopienski returned home from work to find that his Honda 250X four-wheeler was missing from his carport. Lopienski looked though the woods at the back of his home and then called his son at Asheboro High School to inquire if his son had left it elsewhere or loaned it to someone. Upon learning that his son did not know where the four-wheeler was,Lopienski drove to the Randolph County Sheriff's Department to report the four-wheeler as missing.
Lopienski's four-wheeler was very distinct in appearance, with several after-market items on it. In describing the four-wheeler, Lopienski stated:
The fenders have been cut in the front, the nurf bars have been added to the side, that's where the four-wheeler wheels are going in there. The front bumper is a BG brand front bumper. That was added. The pipe, that was added. That's a BG pipe. It's an after-market seat which has the little flame on it. And the stickers that are on it, the big 250X, that's an after-market thing that's been added to it. The handlebars, the pad and the grips, that's after-market, and that's been added to it also. Also the frame was painted purple. That's a cosmetic thing. And of course the racing numbers were added to it also.
Lopienski also stated that his four-wheeler had a large "5" on the front. Further, the vehicle had a kill-switch on it that required a plastic key to be inserted into the switch before the vehicle would start. The key was kept inside the Lopienski home and was not stolen. The four-wheeler was recovered several months later and was returned to Lopienski, but the vehicle's kill-switch mechanism had been removed.
Also on 31 May 2001, Officer Terry Green of the Asheboro Police Department was patrolling on Martin Luther King, Jr. Drive in Asheboro at about 4:00 p.m. when he saw a blue truck carrying what appeared to be a four-wheeler or three-wheeler. This aroused Green's suspicion because the area was known as a place to take items to sell for drugs. For that reason, Green followed the truck to N.C. Highway 42, where he observed the truck traveling above theposted speed limit. Green activated his emergency equipment and stopped the truck. Defendant was the driver of the truck. The truck also had three other occupants, another man, a woman and a small child.
Green identified the four-wheeler in the back of defendant's truck as appearing to be the same make and type of four-wheeler as Lopienski's. Green remembered the four-wheeler in defendant's truck because:
It stood out because it's a racing four-wheeler. You don't see many racing-type four-wheelers. Also the number and sticker on the side and the different colors between the red and the other color that was on the vehicle, the four-wheeler when I seen it.
Defendant told Green that the four-wheeler belonged to a friend. Green checked with 911 to see if anybody had reported a four-wheeler stolen, but they advised him that they had not received any calls. Green let the vehicle go with a verbal warning for speeding and logged in the incident in the police department's 911 computer database.
On 1 June 2001, defendant was questioned by Lieutenant Keith Owenby and Sergeant Roger Brewer of the Randolph County Sheriff's Department about Lopienski's missing four-wheeler. Defendant told Owenby that a couple of days before James Coley Cook had brought him a four-wheeler and asked defendant to help him sell it. Defendant took Owenby and Brewer to a home on Grantville Lane where defendant said he and Cook sold the four-wheeler to Jeffery Stiltner. When shown a photograph of Lopienski's four-wheeler,defendant told Owenby and Brewer that it was not the four-wheeler that he delivered to Stiltner's home.
On 4 July 2001, Stiltner went to the Randolph County Sheriff's Department and gave Owenby a written statement. Stiltner was shown a photograph of Lopienski's four-wheeler and identified it as the four-wheeler he had recently purchased. Stiltner told Owenby that he had purchased the four-wheeler from two men in a blue truck. Stiltner knew only one of the men, an older man, later identified as Cook. Stiltner did not know defendant, but was able to identify defendant as the second man after viewing a photo array prepared by Owenby.
Stiltner knew Cook as the father of a friend. In late May of 2001, Stiltner was at a friend's home looking for brake shoes for a racing motorcycle Stiltner owned. The friend, Kizer Endicott, often worked on motorcycles and often had spare parts available. While at Endicott's, Cook and defendant arrived and tried to sell Endicott a four-wheeler. When Endicott declined to buy the four-wheeler, Stiltner offered to buy it. Stiltner testified that Cook did most of the talking while they were working out a deal for the four-wheeler. Stiltner directed Cook and defendant to drive the four-wheeler to Stiltner's home, where he would pay them $200.00 of the $400.00 price they agreed upon. Stiltner arrived at his home before Cook and defendant, despite stopping at an automatic teller machine for cash on his way. Cook and defendant told Stiltner that they had been stopped for speeding. Before Stiltner paid Cook and defendant, he tried to start the four-wheeler to make sure theengine was sound. However, Stiltner could not get the four-wheeler to crank and defendant had to start it for him. Stiltner purchased the four-wheeler and made arrangements for Cook to return in about a week for the remaining $200.00.
Also with defendant and Cook that day was Amber Green, who was dating defendant at the time. Previously, on 30 May 2001, defendant and Cook arrived at Amber's home with a four-wheeler in the back of defendant's truck. Amber identified the four-wheeler in the back of defendant's truck as being Lopienski's four-wheeler. Amber was with defendant and Cook when they later sold the four-wheeler, but stayed in the truck and did not see to whom it was sold. At some point in time, defendant and Cook told Amber that the four-wheeler was stolen.
Defendant argues on appeal that the trial court erred in denying his motion to dismiss the charges for insufficiency of the evidence. Defendant contends that the State sought to prove the charges based on the doctrine of recent possession and that the State failed to show sufficient evidence that defendant had both the power and intent to control the four-wheeler, a required element of both felony larceny and felony possession. Defendant argues that the evidence clearly showed that Cook possessed the four-wheeler as Cook was the one that did all the talking and arranged the sale. We disagree.
In reviewing challenges to the sufficiency of the evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Statev. Benson, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then "it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." State v. Thomas, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (emphasis in original).
The presumption of recent possession "is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt." State v. Baker, 213 N.C. 524, 526, 196 S.E. 829, 830 (1938). "Recent possession is not evidence of guilt; it just raises an inference that will permit the case to go to the jury under proper instructions from the court." State v. Greene, 289 N.C. 578, 583, 223 S.E.2d 365, 368-69 (1976). The presumption of recent possession is only met if the State proves beyond a reasonable doubt that: 1) the property described in the indictment was stolen; 2) the stolen goods were found in the defendant's possession; and 3) the possession was recently after the larceny. State v. Maines, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981). Defendant contends that the State did not present sufficient evidence of his possession of the four-wheeler.
In discussing the doctrine of recent possession where more than one person had access to the goods, the Supreme Court has said: The "exclusive" possession required to support an inference or presumption of guilt need not be a sole possession but may be joint. If the situation is one where persons other than defendant have equal access to the stolen goods, the inference may not arise. For the inference to arise where more than one person has access to the property in question, the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property or other evidence which sufficiently connects the accused person to the crime or a joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all.
Maines, 301 N.C. at 675, 273 S.E.2d at 294 (internal citation omitted).
In reviewing the evidence, giving the State every reasonable inference, we conclude that there was sufficient evidence to withstand defendant's motion to dismiss. The evidence clearly showed that defendant transported the four-wheeler in the back of his truck on the day the four-wheeler was stolen, that defendant and Cook tried to sell the four-wheeler, that in furtherance of the sale defendant started the four-wheeler for Stiltner and that defendant and Cook told Amber that the four-wheeler was stolen. Any contradictions or discrepancies in the evidence are properly resolved by the jury. State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). We conclude that the trial court did not err in denying the defendant's motion. Accordingly, defendant's assignment of error fails.
Defendant failed to set out his remaining assignments of error in his brief. Because he has neither cited any authority norstated any reason or argument in support of those assignments of error, they are deemed abandoned. N.C. R. App. P. 28(b)(6).
No error.
Judges GEER and LEVINSON concur.
Report per Rule 30(e).