IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-856

 Filed: 15 May 2018

McDowell County, Nos. 14 CRS 50509, 50512

STATE OF NORTH CAROLINA

 v.

MOLLIE ELIZABETH B. McDANIEL

 Appeal by Defendant from judgments entered 24 January 2017 by Judge J.

Thomas Davis in Superior Court, McDowell County. Heard in the Court of Appeals

22 January 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Deborah M.
 Greene, for the State.

 Gilda C. Rodriguez for Defendant.

 McGEE, Chief Judge.

 Mollie Elizabeth B. McDaniel (“Defendant”) appeals her convictions for

felonious breaking and entering and larceny after breaking and entering. For the

reasons discussed below, we vacate Defendant’s convictions.

 I. Factual and Procedural Background

 Daniel Sheline (“Mr. Sheline”) inherited five acres of real property and a three-

bedroom house located at 30 Woody Street in Marion, North Carolina, in February

2014. Mr. Sheline visited the house at 30 Woody Street on 20 March 2014 to “check
 STATE V. MCDANIEL

 Opinion of the Court

on it, [and] make sure nothing had been bothered.” Mr. Sheline observed a number

of items of personal property in the house during the 20 March 2014 visit, including

an aluminum ladder and push lawnmower, both in the basement; an unrestored

cuckoo clock; miscellaneous furniture; aluminum pots and pans; heirloom china; an

Atari electronic gaming system; and a monitor heater, located behind the front door

of the house, which was wired and plumbed through copper tubing to a kerosene oil

tank outside the house. The monitor heater was in working order, the copper tubing

was intact, and there was kerosene in the outside oil tank.

 When Mr. Sheline left the house on 20 March 2014, he locked the front door’s

knob lock. Mr. Sheline did not have a key to the deadbolt lock, which could only be

locked from the inside, so he left the deadbolt unlocked. The door to the basement of

the house was pulled shut and secured from the inside with a padlock that “had a

screwdriver through it [so that] nobody could open it from the outside.” Mr. Sheline

testified “[t]he only way . . . [to] open [the basement door] would be to crawl through

a window or have a key and go down the [interior] steps and open it [from inside the

house].” The house also had a side door that was nailed shut. Mr. Sheline posted a

“no trespassing” sign on the front door of the house, and stated that, as of 20 March

2014, “[n]o one [else] had permission to go into the house at all.”

 When Mr. Sheline returned to the house at 30 Woody Street on 1 April 2014,

the deadbolt to the front door was locked and the doorknob lock was unlocked. The

 -2-
 STATE V. MCDANIEL

 Opinion of the Court

basement door and a window next to the basement door were both open, and the

padlock to the basement door was missing. As Mr. Sheline walked up the stairs from

the basement into the house, he smelled a strong odor of kerosene. He “found the

whole living room floor was full of [leaked] kerosene and the monitor heater was

missing.” The piping from the heater to the outside oil tank had been cut and the

copper tubing was missing. Mr. Sheline noticed that other items were missing from

the house, including the aluminum ladder, lawnmower, and cuckoo clock. The

house’s electrical wiring had been ripped from the electric box and removed, and

various plumbing fixtures were also missing. Mr. Sheline’s wife called the police to

report the stolen property.

 Lieutenant Detective Andy Manis (“Lt. Det. Manis”) of the McDowell County

Sherriff’s Office (“MCSO”) received information on 2 April 2014 that the property

missing from the house at 30 Woody Street was located at a house at 24 Ridge Street.

Lt. Det. Manis went to investigate and found a monitor heater, lawnmower,

aluminum ladder, pipes, and wiring outside the residence at 24 Ridge Street. Lt. Det.

Manis knocked on the door. Stephanie Rice (“Ms. Rice”) answered the door and

provided information to Lt. Det. Manis indicating a person driving a white pickup

truck had unloaded the property at 24 Ridge Street earlier that day. Mr. Sheline

later identified the items found at 24 Ridge Street as the property missing from 30

Woody Street.

 -3-
 STATE V. MCDANIEL

 Opinion of the Court

 Detective Jason Grindstaff (“Det. Grindstaff”) of the MCSO received a report

on 4 April 2014 that someone had again entered the house at 30 Woody Street, left in

a white pickup truck, and turned down Ridge Street. Det. Grindstaff went to Ridge

Street and found a white Chevrolet pickup truck parked directly across the street

from the house at 24 Ridge Street. Defendant was sitting in the driver’s side of the

truck. Det. Grindstaff asked Defendant for identification and permission to search

the vehicle. With Defendant’s permission, Det. Grindstaff searched the truck’s

interior cabin and outer truck bed. He found an Atari gaming system, glassware,

china, and an antique clock in the bed of the truck. Det. Grindstaff arrested

Defendant. Mr. Sheline later confirmed the items found in the truck were property

from 30 Woody Street. Mr. Sheline testified the property found in the white pickup

truck on 4 April 2014 “might have been” in the house at 30 Woody Street when he

was there on 1 April 2014.

 According to Det. Grindstaff, Defendant said she “got [the property in the

pickup truck] from a residence on Woody Street[,]” but indicated “[s]omeone gave her

. . . permission to go inside the residence and get the property.” Defendant stated

that a friend of hers, Michael Nichols (“Nichols”) “told her a neighbor [of] Mr. Sheline

[] gave them permission to enter the residence.” Defendant also told Det. Grindstaff

that Nichols had been at 24 Ridge Street shortly before Det. Grindstaff arrived, but

“had just left the residence . . . [and] she did not know where [Nichols] was going.”

 -4-
 STATE V. MCDANIEL

 Opinion of the Court

 Defendant testified she met Nichols in 2012 and worked with him “doing some

salvage work at [an] old abandoned place at 50 Woody Street[,] . . . going through and

taking some old metal and stuff, working together on that.” Defendant stated she

and Nichols went to the residence at 30 Woody Street in October 2013 and spoke to

an elderly man who answered the door. According to Defendant, the elderly man

gave Nichols and Defendant permission to remove a plow and some scrap metal from

the basement at 30 Woody Street. Nichols and Defendant took the items to the

building at 50 Woody Street, where they were collecting scrap metal to sell.

Defendant stopped working with Nichols in late 2013. She collected unemployment

benefits for several months and, when those benefits ended, she began working with

Nichols again.

 Defendant testified that on 2 April 2014, at Nichols’s request, she drove a white

pickup truck to the building at 50 Woody Street and “loaded some stuff on the truck”

from a crawl space underneath the building, including a ladder, monitor heater, “and

various other things that were all under there in that spot.” Defendant testified she

believed the items belonged to a friend of Nichols who was storing them at 50 Woody

Street. Nichols asked Defendant “to bring the truck up and carry [the property] down

[the hill] for him.” Defendant testified she drove the items to 24 Ridge Street and

deposited them outside the residence, “up against the side of the building.”

 Defendant testified Nichols called her on 4 April 2014 and

 -5-
 STATE V. MCDANIEL

 Opinion of the Court

 asked me to give him a ride to the scrap yard. He said he
 had a load of aluminum or something. I got to his house
 and he said he wasn’t ready to go yet, but that I could go
 up the hill [to the building at 50 Woody Street]. There was
 still a bunch of stuff over there in the house he thought I
 might be interested in. . . . In the meantime, [Nichols said]
 if I wanted to go up there and look around and see if there
 [was] anything that I might be interested in, there was still
 a lot of stuff up there at the house at 50 [Woody Street].
 . . . So I went up there and got the items that [Det.
 Grindstaff found] on my truck out of the attic of [the] house
 at [50 Woody Street] at that time.

Defendant stated she drove the truck to 24 Ridge Street, where she saw Nichols and

another man loading bags of aluminum cans into the trunk of a car. According to

Defendant, Nichols and the man drove away hurriedly and, as Nichols was driving

away, Defendant saw Det. Grindstaff approaching. Defendant admitted she told Det.

Grindstaff that she had recently removed the property in her truck from a house “on

Woody Street,” but testified she was referring to the building at 50 Woody Street.

Defendant testified she had not been to the house at 30 Woody Street since going

there with Nichols in October 2013.

 Defendant was charged by separate indictments on 21 July 2014 with (1) one

count of felony breaking and entering and one count of larceny after breaking and

entering, on or about 20 March 2014, in connection with the lawnmower, aluminum

ladder, monitor heater, kerosene, electrical wiring, flooring, and cuckoo clock found

at 24 Ridge Street on 2 April 2014; and (2) one count of felony breaking and entering

and one count of larceny after breaking and entering, on 4 April 2014, in connection

 -6-
 STATE V. MCDANIEL

 Opinion of the Court

with the Atari game system, heirloom china, and antique radio found in Defendant’s

truck on that date. The charges were joined for trial.

 At the close of the State’s evidence, Defendant moved to dismiss the charges

related to the alleged 20 March 2014 breaking and entering and larceny based on

insufficiency of the evidence. The State conceded it was

 a circumstantial case, obviously, that [Defendant was] the
 one that broke into the house [at 30 Woody Street] the first
 time and brought the items and deposited them at [24]
 Ridge Street, and then two days later [] broke[] in [to the
 house at 30 Woody Street] again and [came] back to Ridge
 Street with another load.

Nevertheless, the State contended the evidence that, on 4 April 2014, Defendant was

found in possession of certain stolen property from a purported second break-in was

sufficient to show Defendant was “also responsible for the larceny [of the other

property] and the break-in for the first time because it[] [was] Ridge Street [again].”

Defense counsel noted Defendant was not present when the stolen property was

discovered at 24 Ridge Street on 2 April 2014, and further observed “it wasn’t

[Defendant’s] residence[.]”

 The trial court initially indicated it would allow Defendant’s motion to dismiss

with respect to the 20 March 2014 charges only. Before the presentation of

Defendant’s evidence, however, the court revisited the matter, stating it “may have

dismissed the wrong one[.]” The court expressed some confusion over the dates of the

alleged offenses:

 -7-
 STATE V. MCDANIEL

 Opinion of the Court

 TRIAL COURT: I did dismiss the [20 March 2014 breaking
 and entering charge], but what I am telling you is I may
 have gotten them backwards. I should have dismissed the
 April 4 [2014] [breaking and entering charge] and left the
 March 20 [2014] [charge] in place based on this evidence. I
 want to make sure I have time to correct that since nothing
 has happened at this point in time. . . . The way I see it
 is the only testimony as to opening the window, the door
 [at 30 Woody Street], all the situations are from one
 incidence. We don’t have any testimony there was any sort
 of entry that second time, and that admission that
 [Defendant] makes was not peculiar to win. The evidence
 that [the State] brought out [that] somebody reported
 seeing the [white pickup truck], I think all that does is goes
 to the state of mind of this officer. I think it’s only offered
 for that purpose. . . . [T]herefore, it cannot be used as
 substantive evidence of any particular crime. As a result
 [], I may have dismissed – by dismissing the April 4 [2014]
 allegation, I am basically – I may have committed error to
 the State because that’s the later one, and it would be hard
 for you to relate the original breaking and entering that
 was testified to today to that indictment because it was the
 wrong date. I may have missed [sic] the wrong one. . . . I
 can correct it right now without any prejudice to []
 [D]efendant. I was thinking it over through lunch and I
 may have dismissed the wrong one.

After further discussion, the trial court concluded the State had presented

insufficient evidence to support two separate charges of breaking and entering. The

court reinstated both charges in the indictment dated 20 March 2014, i.e., one count

of felonious breaking and entering and one count of larceny after breaking and

entering. It dismissed the 4 April 2014 charge of breaking and entering, but left in

place the 4 April 2014 charge of larceny after breaking and entering, finding there

was “evidence to show that the [property found in Defendant’s possession on 4 April

 -8-
 STATE V. MCDANIEL

 Opinion of the Court

2014] was acquired as a result of the original breaking and entering [that allegedly

occurred on 20 March 2014].” However, the court indicated that, if the jury ultimately

convicted Defendant of both larcenies, it “would have to entertain whether or not

arrested judgment would be appropriate to combine those larcenies into [a] single

larceny[.]”

 Defendant was found guilty of one count of felony breaking and entering and

two counts of larceny after breaking and entering on 24 January 2017. The trial court

arrested judgment on the 4 April 2014 larceny conviction. Defendant was sentenced

to an active sentence of four months’ imprisonment, to be followed by sixty months of

supervised probation. Defendant appeals.1

 II. Defendant’s Appeal

 1 Defendant filed a petition for writ of certiorari with this Court on 11 September 2017 in light
of procedural defects in her notice of appeal. Defendant failed to comply with N.C.R. App. P. Rule 4,
which provides that a party entitled to appeal in a criminal case may do so by (1) giving oral notice of
appeal at trial, or (2) filing a written notice of appeal with the clerk of superior court within fourteen
days of entry of judgment. See N.C.R. App. P. 4(a). In the present case, Defendant failed to comply
with either provision. Defendant contends she gave oral notice of appeal after the trial concluded and
after defense counsel had left the courtroom. Thus, although the trial court entered appellate entries
dated 24 January 2017, Defendant’s notice of appeal was not recorded and does not appear in the trial
transcript. See, e.g., State v. Hughes, 210 N.C. App. 482, 485, 707 S.E.2d 777, 778 (2011) (“Although
the record includes appellate entries . . . which indicate through boilerplate that defendant gave notice
of appeal, mere appellate entries are insufficient to preserve the right to appeal.” (citation and
quotation marks omitted)). Defendant also did not file a written notice of appeal with the clerk of
court. See, e.g., State v. Blue, 115 N.C. App. 108, 113, 443 S.E.2d 748, 751 (1994) (concluding defendant
did not preserve right to appeal convictions where record “contained no written notices of appeal as
required by Rule 4 of the Rules of Appellate Procedure.”). Defendant failed to preserve her right to
appeal, subjecting the appeal to dismissal. See State v. Briley, 59 N.C. App. 335, 337, 296 S.E.2d 501,
503 (1982) (“Rules of Appellate Procedure are mandatory and failure to observe them is grounds for
dismissal of an appeal.” (citations omitted)). The State did not raise the issue of defective notice. We
exercise our discretion to issue the writ of certiorari and reach the merits of Defendant’s appeal. See
State v. Hammonds, 218 N.C. App. 158, 162-63, 720 S.E.2d 820, 823 (2012).

 -9-
 STATE V. MCDANIEL

 Opinion of the Court

 Defendant argues the trial court erred by denying her motion to dismiss

because the State presented insufficient evidence Defendant was the perpetrator of a

breaking and entering or a larceny that allegedly occurred on or about 20 March 2014.

We agree.

 A. Standard of Review

 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). “The

standard of review for a motion to dismiss in a criminal case is whether there is

substantial evidence (1) of each essential element of the offense charged, or of a lesser

offense included therein, and (2) of defendant’s being the perpetrator of such offense.”

State v. Irons, 189 N.C. App. 201, 204, 657 S.E.2d 733, 735 (2008) (citation and

internal quotation marks omitted). The trial court should consider the evidence in

the light most favorable to the State, and “the State is entitled to all reasonable

inferences which may be drawn from the evidence. Any contradictions or

discrepancies arising from the evidence are properly left for the jury to resolve and

do not warrant dismissal.” State v. Burke, 185 N.C. App. 115, 118, 648 S.E.2d 256,

258-59 (2007) (citation and internal quotation marks omitted). However, “[i]f the

evidence is sufficient only to raise a suspicion or conjecture as to either the

commission of the offense or the identity of the defendant as the perpetrator of it, the

 - 10 -
 STATE V. MCDANIEL

 Opinion of the Court

motion should be allowed.” State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455

(2000) (citations and quotation marks omitted).

 B. Analysis

 Defendant was convicted for felonious breaking and entering and larceny after

breaking and entering that allegedly occurred on or about 20 March 2014. “The

elements of felonious breaking and entering under [N.C. Gen. Stat.] § 14-54(a) are (1)

the breaking or entering, (2) of any building, (3) with the intent to commit any felony

or larceny therein.” State v. Poore, 172 N.C. App. 839, 841, 616 S.E.2d 639, 640

(citation and internal quotation marks omitted); see also N.C. Gen. Stat. § 14-54(a)

(2017). “The essential elements of larceny are: (1) taking the property of another; (2)

carrying it away; (3) without the owner’s consent; and (4) with the intent to deprive

the owner of the property permanently.” State v. Wilson, 154 N.C. App. 686, 690, 573

S.E.2d 193, 196 (2002) (citations omitted). “[W]here larceny is committed pursuant

to breaking and entering, it constitutes a felony without regard to the value of the

property in question.” State v. Richardson, 8 N.C. App. 298, 301, 174 S.E.2d 77, 79

(1970) (citation omitted); see also N.C. Gen. Stat. § 14-72(b)(2) (2017).

 In the present case, the State conceded at trial its evidence against Defendant

was entirely circumstantial. The State advanced the doctrine of recent possession,

which our Supreme Court has described as

 a rule of law that, upon an indictment for larceny,
 possession of recently stolen property raises a presumption

 - 11 -
 STATE V. MCDANIEL

 Opinion of the Court

 of the possessor’s guilt of the larceny of such property. The
 presumption is strong or weak depending upon the
 circumstances of the case and the length of time
 intervening between the larceny of the goods and the
 discovery of them in [a] defendant’s possession.
 Furthermore, when there is sufficient evidence that a
 building has been broken into and entered and thereby the
 property in question has been stolen, the possession of such
 stolen property recently after the larceny raises
 presumptions that the possessor is guilty of the larceny and
 also of the breaking and entering.

State v. Maines, 301 N.C. 669, 673-74, 273 S.E.2d 289, 293 (1981) (citations omitted).

“For the doctrine of recent possession to apply, the State must show: (1) the property

was stolen, (2) [the] defendant had possession of the property, subject to his control

and disposition to the exclusion of others, and (3) the possession was sufficiently

recent after the property was stolen[.]” State v. McQueen, 165 N.C. App. 454, 460,

598 S.E.2d 672, 676-77 (2004) (citations omitted); see also State v. Pickard, 143 N.C.

App. 485, 487, 547 S.E.2d 102, 104 (2001) (noting State must prove each element of

recent possession “beyond a reasonable doubt.” (citation omitted)).

 The “mere possession of stolen property is insufficient to raise a presumption

of guilt.” McQueen, 165 N.C. App. at 460, 598 S.E.2d at 677 (citations omitted). This

Court has held that “[e]xclusive possession does not necessarily mean sole possession.

Exclusive possession means possession to the exclusion of all persons not party to the

crime.” State v. Foster, 149 N.C. App. 206, 209, 560 S.E.2d 848, 851 (2002) (citation

and internal quotation marks omitted) (emphasis added). “The possession must be

 - 12 -
 STATE V. MCDANIEL

 Opinion of the Court

so recent after the breaking or entering and larceny as to show that the possessor

could not have reasonably come by it, except by stealing it himself or by his

concurrence.” State v. Hamlet, 316 N.C. 41, 43, 340 S.E.2d 418, 420 (1986) (citations

omitted).

 As an initial matter, we observe that Defendant was not convicted of breaking

and entering, or sentenced for larceny, in connection with the stolen property actually

found in her possession on 4 April 2014. Defendant was convicted on charges

stemming from a breaking and entering and larceny that, according to the relevant

indictment, occurred “on or about” 20 March 2014. That indictment specifically

described the property stolen on that date as “a Sears pushmower, aluminum ladder,

monitor heater, 100 gallons of kerosene, electrical wiring, flooring[,] and a German

[cuckoo] clock.” These items were discovered by Lt. Det. Manis at 24 Ridge Street on

2 April 2014, outside Defendant’s presence, although Defendant admitted she drove

a short distance with the property in her truck earlier that day. Thus, the State’s

own evidence suggested that up to two weeks may have passed between the alleged

breaking and entering and larceny, on or around 20 March 2014, and the discovery

of the stolen property, on 2 April 2014, and the property was not actually found in

Defendant’s possession.

 In Maines, which the dissent cites for its statement of the elements of recent

possession, our Supreme Court explicitly defined the second element of the doctrine

 - 13 -
 STATE V. MCDANIEL

 Opinion of the Court

as follows: “[T]he stolen goods were found in [the] defendant’s custody and subject to

his control and disposition to the exclusion of others though not necessarily found in

[the] defendant’s hands or on his person so long as he had the power and intent to

control the goods[.]” 301 N.C. at 674, 273 S.E.2d at 293 (emphases added).

“Exclusive” possession may include joint possession by “co-conspirators or persons

acting in concert in which case the possession of one criminal accomplice would be

the possession of all.” Id. at 675, 273 S.E.2d at 294. Regardless, under Maines, “the

evidence must show the person accused of the theft had complete dominion, which

might be shared with others, over the property . . . which sufficiently connects the

accused person to the crime[.]” Id. (emphasis added).

 Defendant acknowledged she was briefly in possession of the stolen property

on 2 April 2014, when she transported it a few blocks from a building at 50 Woody

Street, where the property was being stored, to the residence at 24 Ridge Street. The

dissent appears to conclude this constituted “requisite actual possession and control

over the recently stolen property” sufficient to connect Defendant with the theft that

occurred two weeks prior. As noted above, however, “mere possession of stolen

property is insufficient to raise a presumption of guilt.” McQueen, 165 N.C. App. at

460, 598 S.E.2d at 677 (citations omitted). In Maines, the mere fact that the

defendant “was driving the car [containing the stolen property] and presumably in

control of it and its contents” was insufficient to support an inference that he was the

 - 14 -
 STATE V. MCDANIEL

 Opinion of the Court

thief based on the doctrine of recent possession. Maines, 301 N.C. at 676, 273 S.E.2d

at 294. In this case, like the Maines defendant, Defendant testified she did not know

the property was stolen, and believed it belonged to a friend of Nichols, when she put

it in her truck on 2 April 2014. She also testified that, as of 2 April 2014, her last

contact with Nichols was in “November or early December of 2013.” There was no

evidence tending to show Defendant possessed, controlled, or exercised dominion over

the stolen property during the two weeks between the date of the alleged theft and

her admitted transport of that property. Compare with State v. Lytton, 88 N.C. App.

758, 759, 365 S.E.2d 6, 7 (1988) (holding evidence was sufficient to raise recent

possession doctrine where “evidence [did] not suggest that anyone other than [the]

defendant and [another individual who was party to the crime] possessed, controlled,

or had anything to do with the [stolen property]; instead . . . only they had and

controlled the [stolen property] by showing [it] to [a third party], offering to sell [it],

setting their price, and receiving the purchase money.”).

 Moreover, the State was required to demonstrate Defendant possessed the

stolen property “to the exclusion of all persons not party to the crime.” Maines, 301

N.C. at 675, 273 S.E.2d at 294 (emphasis added). The dissent asserts that, in this

case, “[n]o one disputes Nichols was a party to taking the [stolen] items hidden

underneath 50 Woody Street[.]” We note the record does not indicate whether Nichols

was charged in connection with the stolen property identified in either indictment,

 - 15 -
 STATE V. MCDANIEL

 Opinion of the Court

and the State did not assert a criminal conspiracy between Defendant and Nichols.

However, even assuming arguendo that Nichols was a party to the crime, the State

failed to show that, between 20 March 2014 and 2 April 2014, the possession of the

stolen property by Defendant and/or Nichols was “to the exclusion of all persons not

party to the crime.” Id. The evidence suggests the stolen property was stored at an

abandoned building at 50 Woody Street after its theft and before Defendant took it to

24 Ridge Street two weeks later. There was no evidence tending to show that,

between 20 March 2014 and 2 April 2014, Defendant possessed, controlled, or even

knew of the stolen property located at 50 Woody Street. The evidence also did not

show the stolen property was not possessed or controlled by any third parties

unconnected to the crime during those two weeks. In the absence of such showing,

the State’s evidence was insufficient to support an inference that Defendant broke

into Mr. Sheline’s residence on 20 March 2014 and stole the property she transported

to 24 Ridge Street two weeks later.

 This case is factually distinguishable from State v. Wilson, 313 N.C. 516, 330

S.E.2d 450 (1985), and State v. Foster, 149 N.C. App. 206, 560 S.E.2d 848 (2002), cases

cited by the dissent. In Wilson, our Supreme Court held “[i]t is not always necessary

that the stolen property be actually in the hands of the defendant in order to trigger

the inference that [the defendant was] the thief. The doctrine [of recent possession]

is equally applicable where the stolen property is under the defendant’s personal

 - 16 -
 STATE V. MCDANIEL

 Opinion of the Court

control.” Id. at 536, 330 S.E.2d at 464 (citations omitted) (emphasis added). In

Wilson, the Court held the jury was properly instructed on the doctrine of recent

possession where a stolen watch “was seen [after the theft] only in the hands of the

[defendant’s girlfriend] or the defendant until it was sold by the defendant.” Id.

(emphasis in original). The defendant’s girlfriend was seen wearing the watch “two

or three weeks after the crime[] [was] committed[,] [and a] week later the watch was

seen in the hands of the defendant.” Id. at 535, 330 S.E.2d at 463-64. Under these

circumstances, a jury instruction on recent possession was appropriate,

notwithstanding “the intervening possession of the watch by [the defendant’s

girlfriend][.]” Id. at 535, 330 S.E.2d at 464.

 In Foster, the defendant was seen driving a truck containing stolen property

mere hours after the property was stolen. There were two passengers in the truck.

On appeal, the defendant did not argue the jury was improperly instructed on the

doctrine of recent possession; he contended the trial court erroneously refused to

include the instruction that “the [stolen] goods must be found in [the] defendant’s

possession ‘to the exclusion of others.’” 149 N.C. App. at 209, 560 S.E.2d at 850. This

Court held the trial court properly denied the defendant’s request for the additional

instruction because “[t]he evidence [did] not suggest that anyone other than [the]

defendant or the other passengers possessed or controlled the [stolen property] seen

in the back of the truck [the] defendant was driving.” Id. at 209, 560 S.E.2d at 851.

 - 17 -
 STATE V. MCDANIEL

 Opinion of the Court

 Unlike in Wilson, there was no evidence in the present case connecting the

property found at 24 Ridge Street on 2 April 2014 to Defendant during the two weeks

between its theft and her admitted transport of the property from 50 Woody Street to

24 Ridge Street. There was no evidence Defendant went to 50 Woody Street during

those two weeks, or that the stolen property was otherwise under Defendant’s

“personal control.” Further, even assuming possession of the property by Nichols

could be imputed to Defendant, the State did not establish that only Nichols

possessed or controlled the property after it was stolen, i.e., to the exclusion of any

third parties not connected to the crime.

 The dissent also cites State v. Johnson, 60 N.C. 235 (1864), in which stolen

property was found six weeks after its theft in a house occupied exclusively by the

defendant and his wife. Our Supreme Court affirmed the trial court’s jury instruction

that

 owing to the length of time which had elapsed from the
 stealing of the goods until the discovery of them in the
 possession of the defendant, no presumption could arise
 that [the defendant] had stolen them; but the fact of his
 having them in possession was evidence which [the jury]
 would consider with the other evidence in the cause in
 determining [the defendant’s] guilt or innocence.

60 N.C. at 236 (emphasis added). The Court explicitly held that, although the

defendant’s possession of stolen goods was “evidence to be considered[,]” the mere fact

of possession did not “raise a legal presumption of the taking[.]” Id. at 237. Johnson

 - 18 -
 STATE V. MCDANIEL

 Opinion of the Court

thus offers little guidance in the present case, because the precise question before us

is whether the State’s evidence did “raise a legal presumption” of Defendant’s guilt

based on the theory of recent possession.

 The State’s argument that Defendant broke into Mr. Sheline’s residence

around 20 March 2014 and stole the items that were found at 24 Ridge Street on 2

April 2014 was based entirely on the evidence that Defendant admitted transporting

the property on 2 April 2014, and, two days later, Det. Grindstaff found Defendant in

a white pickup truck, parked across from the house at 24 Ridge Street, in possession

of entirely different personal property that was also missing from the house at 30

Woody Street.2 We find this evidence insufficient to support Defendant’s convictions

on the 20 March 2014 charges based on the doctrine of recent possession. Defendant

admitted the stolen property found outside the house at 24 Ridge Street was briefly

in her possession on 2 April 2014. However, the State presented no evidence that,

other than that brief period of time on 2 April 2014, the property was in Defendant’s

possession or subject to Defendant’s control, much less “to the exclusion of all persons

not party to the crime.” See Foster, 149 N.C. App. at 209, 560 S.E.2d at 851 (citation

and quotation marks omitted). As discussed above, there was no evidence suggesting

Defendant had exclusive possession or control of the stolen property during the two

 2 We note Defendant was not charged with possession of stolen property in either indictment
at issue in this case.

 - 19 -
 STATE V. MCDANIEL

 Opinion of the Court

weeks that elapsed between the alleged crimes, on or about 20 March 2014, and

Defendant’s admitted transport of the property on 2 April 2014.

 The State contends that, because Defendant “ha[d] the power and intent to

control the access to and use of [her truck][,] [she] ha[d] possession of the [vehicle’s]

known contents[]” when, by her own admission, she transported the stolen property

on 2 April 2014. According to the State, Defendant was “the driver and only

authorized user of the truck[,]”3 and “there [was] no evidence that [] Nichols was

present in the truck at the time [Defendant] had possession of the stolen items.”4

Even taking these statements as true, they do not establish exclusive possession.

 In Maines, our Supreme Court held that “the fact [that the defendant] was

driving the car [containing stolen property] and presumably in control of its contents”

was alone insufficient to support an inference that “he was the thief who stole [the

property] based on the possession of stolen goods.” Maines, 301 N.C. at 676, 273

S.E.2d at 294. In that case, the State failed to show the stolen goods found in the

defendant’s possession were “subject to his control and disposition to the exclusion of

 3 The State did not present evidence Defendant was the “only authorized user of the truck[.]”

Defendant testified the white pickup truck “belonged to [her] father[.]” When asked whether “[she
was] the one driving [the truck] all the time,” Defendant stated: “I [] borrowed it during that week [in
April 2014]. I didn’t drive it all the time, but [my father] let me borrow it occasionally.”

 4 The parties dispute whether Defendant ever represented that Nichols was a passenger in the
truck when she transported the stolen property to 24 Ridge Street on 2 April 2014, but Defendant
submits that she “was not charged with conspiracy, nor was the jury instructed on acting in concert,
[so] [] Nichols was ‘not a party to the crime’ and his [hypothetical] possession of the alleged[ly] stolen
items could not be attributed to [Defendant].”

 - 20 -
 STATE V. MCDANIEL

 Opinion of the Court

others.” Id. at 675, 273 S.E.2d at 294. In this case, Defendant testified she did not

know the property was stolen when Nichols told her it belonged to a friend and asked

her to drive it to another residence. She also testified that, prior to 2 April 2014, she

last spoke with Nichols in November or December 2013. Under Maines, the mere fact

that Defendant transported stolen property did not demonstrate the property was

“subject to [her] control and disposition to the exclusion of others.” Id.

 Because the State failed to prove beyond a reasonable doubt the second

element5 of the doctrine of recent possession, the evidence was insufficient to support

Defendant’s convictions for the breaking and entering and larceny that allegedly

occurred on or about 20 March 2014. Accordingly, we vacate Defendant’s convictions.

As a result, we need not address Defendant’s remaining argument regarding the

length of her probation. See, e.g., State v. Martin, 222 N.C. App. 213, 222, 729 S.E.2d

717, 724 (2012).

 VACATED.

 Judge DAVIS concurs.

 5 The dissent contends that “[w]hether the two weeks, which may have passed between the
breaking and entering and larceny and the discovery of the property being stolen, and Defendant’s
admitted possession, is too remote to apply the doctrine of recent possession was a proper question for
the jury[.]” We note that whether a defendant’s possession of stolen property was sufficiently “recent”
after the larceny is the third element of the doctrine of recent possession, and our holding in this case
“turns upon the second element [of the doctrine]: whether the stolen goods were found in [D]efendant’s
custody and subject to [her] control and disposition to the exclusion of others.” See Maines, 301 N.C.
at 675, 273 S.E.2d at 294. Because we have concluded the State failed to prove exclusive possession,
it is unnecessary to consider whether Defendant’s possession of the stolen property was “too remote to
apply the doctrine of recent possession[.]”

 - 21 -
 STATE V. MCDANIEL

 Opinion of the Court

Judge TYSON dissents by separate opinion.

 -2-
No. COA17-856 – State v. McDaniel

 TYSON, Judge, dissenting.

 The majority’s opinion correctly states the applicable standard of review of the

trial court’s ruling on Defendant’s motion to dismiss, yet erroneously concludes the

State failed to introduce any competent evidence tending to show, and as the jury

found, an essential element of the doctrine of recent possession and reverses

Defendant’s convictions for breaking and entering and larceny. My review and vote

concludes no error occurred in Defendant’s conviction by the jury or in the judgment

entered thereon. I respectfully dissent.

 I. Possession of Recently Stolen Goods

 Defendant’s recent possession of stolen goods raises a presumption of guilt,

where the State’s evidence tends to show the stolen goods were in Defendant’s custody

or control recently after the larceny thereof. The elements of this crime are:

 (1) the property described in the indictment was stolen; (2)
 the stolen goods were found in defendant’s custody and
 subject to his control and disposition to the exclusion of
 others though not necessarily found in defendant's hands
 or on his person so long as he had the power and intent to
 control the goods; and (3) the possession was recently after
 the larceny, mere possession of stolen property being
 insufficient to raise a presumption of guilt.

State v. Maines, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981) (citations omitted).

 In Maines, our Supreme Court held the recent possession doctrine did not

apply to that defendant. The stolen items were found inside a vehicle the defendant

was driving. Id. at 670, 273 S.E.2d at 291. Three other individuals were also present
 STATE V. MCDANIEL

 TYSON, J., dissenting

inside the car, including the registered owner of the vehicle. Id. at 676, 273 S.E.2d at

294.

 The Supreme Court noted the “[d]efendant did not have actual or personal

possession of the stolen property. None of the goods were on his person[.]” Id. The

Court found that the defendant’s possession of the stolen goods was “at most

constructive, based on the fact he was driving the car and presumably in control of it

and its contents.” Id. The Supreme Court reversed the defendant’s conviction because

this analysis was “based on stacked inferences.” Id. The jury was required to infer

that the defendant possessed the recently stolen goods from the lone fact that he was

driving the car with the car’s owner and others inside, and then the jury was required

to further infer he was the perpetrator who had broken and entered and stolen the

items. Id.

 Here, and as acknowledged in the majority’s opinion, it is both admitted and

undisputed that Defendant traveled alone to 50 Woody Street, loaded the items onto

her truck with Nichols’ assistance, and while again alone, with actual and exclusive

possession, drove the stolen items to 24 Ridge Street. It is also undisputed when she

was approached by Detective Grindstaff, Defendant actually and exclusively

possessed other items, which had also been recently stolen from exactly the same

location.

 2
 STATE V. MCDANIEL

 TYSON, J., dissenting

 The State’s evidence was properly admitted and tends to show: “[D]efendant

had possession of the [recently stolen] property, subject to [her] control and

disposition to the exclusion of others.” State v. McQueen, 165 N.C. App. 454, 460, 598

S.E.2d 672, 677 (2004).

 The defendant’s constructive possession in State v. Maines is factually

distinguishable from Defendant’s admitted and actual possession of recently stolen

goods.

 II. State v. Foster

 The majority’s opinion cites State v. Foster, 149 N.C. App. 206, 560 S.E.2d 848

(2002), and asserts Defendant’s possession was not “to the exclusion of all persons not

party to the crime,” and the presumption of guilt, spawned by her recent possession,

would not apply. In Foster, the store owner locked his doors on 10 December. Id. at

207, 560 S.E.2d at 849. When he returned on 11 December, items including a Lawn

Boy mower, trailer, tires, rims, and other items were missing. In the interim early

morning hours, police had observed the defendant-Foster and two other individuals

in the defendant’s truck. The Lawn Boy and tires and rims were in the truck at the

time. Id.

 This Court recognized, “[e]xclusive possession does not necessarily mean sole

possession. Exclusive possession means possession to the exclusion of all persons not

party to the crime.” Id. (citations omitted) (emphasis supplied). The evidence in Foster

 3
 STATE V. MCDANIEL

 TYSON, J., dissenting

showed the defendant and the two other passengers in the truck were all parties to

the crime. The evidence did “not suggest that anyone other than defendant or the

other passengers possessed or controlled the tires, rims, and Lawn Boy seen in the

back of the truck defendant was driving.” Id.

 Whether Defendant possessed the recently stolen items to the exclusion of

anyone else, who was not a party to the crime is not the issue before us. No one

disputes Nichols was a party to taking the items hidden underneath 50 Woody Street

and loading them into Defendant’s truck. Defendant admits Nichols was involved

with the stolen items.

 In State v. Lytton, 88 N.C. App. 758, 365 S.E.2d 6 (1988), the defendant was

charged with and convicted by a jury of felony larceny. This Court held evidence was

sufficient to raise the recent possession doctrine where another man, in addition to

the charged defendant, was a party to the crime and the evidence did not suggest that

anyone other than the defendant and this other man “possessed, controlled, or had

anything to do with” the stolen guns; instead, it tended “to show that only they had

and controlled the stolen guns.” Id. at 759, 365 S.E.2d at 7. Defendant’s argument,

asserting she was not charged with conspiracy and the jury was not instructed on

acting in concert, and “no other persons party to the crime[s]” were charged for the

jury to consider, is irrelevant to the issue before us on her motion to dismiss.

 4
 STATE V. MCDANIEL

 TYSON, J., dissenting

 Once the stolen items were loaded into her truck, Defendant had the requisite

actual possession and control over the recently stolen property. Whether Nichols

could have also controlled the stolen property is irrelevant to the sufficiency of the

State’s evidence to overcome and deny Defendant’s motion to dismiss and to support

the jury’s verdict of Defendant’s guilt under the doctrine of recent possession of stolen

goods. See id.

 Further, the majority’s opinion acknowledges Defendant was briefly in

possession of the stolen property. The length of time Defendant possessed the stolen

property is not material to the State’s evidence tending to show and raising the

presumption that Defendant was the thief, who had stolen the goods under the

doctrine of recent possession to sustain her motion to dismiss.

 III. State v. Wilson

 In State v. Wilson, the Supreme Court recognized no bright line test exists for

the length of time to allow the inference of guilt of the theft spawned by the recent

possession of the goods stolen. State v. Wilson, 313 N.C. 516, 536, 330 S.E.2d 450, 464

(1985). The Court recognized “[t]here is no specific period, however, beyond which

possession can no longer be considered ‘recent.’ Rather, the term is a relative one and

will depend on the circumstances of each case.” Id. (citations omitted).

 In light of all of the other circumstances in Wilson, our Supreme Court held

the defendant and his girlfriend’s possession of the stolen watch, one to three weeks

 5
 STATE V. MCDANIEL

 TYSON, J., dissenting

after the victim had been stabbed and his watch was stolen “was sufficiently recent

to support a reasonable inference of the defendant’s guilt under the doctrine of recent

possession.” Id. at 536-37, 330 S.E.2d at 464.

 Here, Defendant admitted she alone had transported the items that had been

stolen on or about 20 March 2014 in her truck and she had unloaded them at the

Ridge Street address. Her possession of the recently stolen goods was exclusive and

100% within her control at that time. Whether the two weeks, which may have

passed between the breaking and entering and larceny and the discovery of the

property being stolen, and Defendant’s admitted possession, is too remote to apply

the doctrine of recent possession was a proper question for the jury and does not

support vacating Defendant’s conviction as a matter of law. See id. at 536-37, 330

S.E.2d at 464.

 IV. Conclusion

 The State’s evidence tended to show Defendant’s exclusive possession of

recently stolen goods. The trial court correctly submitted the case to the jury. The

jury considered and weighed the evidence and properly convicted Defendant. See

State v. Johnson, 60 N.C. 235, 237-38 (1864) (upholding larceny conviction where

goods were stolen six weeks prior to when they were found in a house rented by the

defendant and his wife). “It appears to have been fairly laid before the jury, according

 6
 STATE V. MCDANIEL

 TYSON, J., dissenting

to the view here taken, and the jury have come to a conclusion with which we have

no right to interfere, if we had the inclination.” Id.

 Correctly applying the standard of review to Defendant’s motion to dismiss,

Defendant has failed to show any prejudicial and reversible errors occurred at trial

which would entitle her to a new trial. I find no error in the jury’s conviction or in

the judgment entered thereon. I respectfully dissent.

 7